FILED
SUPERIOR COURT
OF GUAM

2020 AUG 31 PM 5: 03

CLERK OF COURT

By:

1 VINCENT LEON GUERRERO
P.O. BOX 12457
2 TAMUNING, GUAM 96931
TELEPHONE: (671) 687-5947
3 *Attorney for Plaintiff Guam Waterworks Authority*

4

5

## IN THE SUPERIOR COURT OF GUAM

6 GUAM WATERWORKS ) CIVIL CASE NO. CV 0605-20
AUTHORITY, )
7 Plaintiff, )
)
8 vs. ) **COMPLAINT**
)
9 BADGER METER, INC., and DOE )
INSURANCE COMPANIES 1, 2 and 3, )
10 )
)
11 Defendants. )
)
12

13 **COMES NOW,** Plaintiff **GUAM WATERWORKS AUTHORITY,** by and through its

14 attorney **VINCENT LEON GUERRERO, ESQ.** and its Complaint against Defendants **BADGER**

15 **METER, INC.,** and **DOE INSURANCE COMPANIES 1, 2** and **3,** hereby alleges as follows:

16

17 **JURISDICTION**

18 1. This court has jurisdiction pursuant to Title 7 G.C.A. § 3105, 5 G.C.A. § 5480 and 2

19 GAR § 9108 (3).

20 **PARTIES**

21 2. Plaintiff Guam Waterworks Authority ("GWA") is a Guam public corporation

22

23 authorized by statute under 12 G.C.A. Chapter 14.

24 3. Defendant Badger Meter, Inc. ("Badger") is a corporation existing under the laws of

25 the state of Wisconsin with its primary domicile at 4545 W. Brown Deer Rd., Milwaukee, WI 53224.

26 4. On information and belief, Badger has obtained coverage from Doe Insurance

27 Company to indemnify the company in the event of customer damages due to product failures or

28

other injuries caused by the negligence or other acts by company management. Pursuant to 22 G.C.A. § 18305, GWA has the right of direct action to recover proven damages from Doe Insurance Company.

## GENERAL ALLEGATIONS

5.     Badger was admitted to transact business in Guam on December 22, 2015 and according to the Annual Report on file with Guam Department of Revenue and Taxation, its Registered Agent for Service of Process is Stanley C. Wilson located at 142 Malate Street Mongmong, Guam 96910.

6.     During the years 2008 through 2010, GWA experienced severe system-wide failure of its existing residential water meters and in 2011, GWA management made the decision to do a total meter replacement.

7.     In November 2011, GWA went public with a request for proposal ("RFP") to solicit proposals to determine the appropriate type and brand of water meters to replace approximately 39,000 residential meters in service at that time and to provide professional services relating to said replacement of residential water meters.

8.     In Badger's initial response to the RFP, and throughout its communications with GWA, Badger represented itself as an expert that could select and provide suitable water meters which would be able to properly function in the environment of Guam and which would avoid loss of revenue to GWA.

9.     Among other things, in its initial submittal in response to GWA's RFP, dated December 12, 2011, Badger represented that "It is important to note that although GWA requires all proposers' meters must meet AWWA [American Water Works Association] standards, Badger Meter's complete line of meters exceeds the AWWA standards in areas of utmost importance to the

LAW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

revenue & performance of the GWA system. Those areas include low flow accuracy, extended high flows for each size, continuous flow accuracies and reduced pressure loss."

10. Badger further represented that "Badger Meter's long, successful history of AMR [Automatic Meter Reading] products in wet, humid pit environments will ensure a successful AMR solution for GWA. Badger Meter utilizes a patented, unique adhesive technology to seal its encoders. Using this technology, our RTR (Recordall Transmitter Register) has a failure rate of less than ¼ of 1%. This, coupled with our robust factory-potting process that connects the encoder to our endpoint, ensures long term reliability in harsh pit environments."

11. A total of six proposals were submitted and the offerors were reduced to the top three by January of 2012. Badger was one of the three remaining offerors. In February 2012, Badger proposed two different residential models, the LP model which was priced at $130.30 per unit and the M25 model priced at $125 per unit.

12. Soon thereafter Badger was selected by GWA as the offeror to provide the meters and the selection was approved by the Consolidated Commission on Utilities by resolution duly enacted on March 13, 2012. The parties then entered into a contract on March 28, 2012 ("Contract").

13. Among other things, the Contract provided that "CONSULTANT shall perform the services utilizing the standard of care normally exercised by professional consulting firms in performing comparable services under similar conditions. GWA's review, approval, acceptance of, and payment of fees for services required under this agreement shall not be construed to operate as a waiver of any rights under this agreement and the CONSULTANT shall be and remain liable to GWA for all costs of any kind which may be incurred by GWA as a result of CONSULTANT'S negligent performance of any of the services performed under this agreement."

LOW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

*Guam Waterworks Authority v. Badger Meter Inc. et al*; CV ____
Complaint

Page 3 of 17

Case 1:20-cv-00032   Document 1-1   Filed 10/12/20   Page 3 of 17

14.     During the negotiations between GWA and Badger in February and March of 2012, it was suggested by Badger that the LP Meter would be the better of the two Badger models to service GWA customers.

15.     Badger represented, including in documentation provided to GWA, that the LP model meters came with a warranty that the LP meters would meet or exceed the AWWA "new meter" accuracy standard for 5 years and would meet or exceed the AWWA "repaired meter" accuracy standard for 15 years.[1]

16.     The first 6,000 LP meters were ordered by GWA on April 20, 2012 at a price of $137.30 per unit.

17.     The first LP shipment arrived in August of 2012 and GWA immediately began installing meters with the purchase and installation of thousands of LP Meters continuing through July 2014.

18.     August 2014, a shipment of 4,280 new LP meters arrived on-island from Badger. At that time, a total of 34,174 meters had been received from Badger and placed into service.

19.     Pursuant to quality assurance and quality control testing procedures, GWA pulled 417 meters from the August 2014 shipment for testing prior to installation. Of the 417 meters tested, 242 failed the new meter test criteria set forth by the AWWA M-6 manual. On September 22, 2014, GWA notified Badger of the excessively high failures of meters received in the latest shipment. Badger Director of Utility Sales, Cindy Kranzler, notified GWA that Badger was working on a remedy for the failed meters.

---

[1] The AWWA "repaired meter" standard set forth in Badger's warranty, applicable to the LP meters at issue, requires those meters to meet or exceed 90% accuracy at low flow (1/4 gpm) for 15 years from the date of shipment. It does not require that the meters in fact be "repaired."

LOW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

20.     After some email exchanges, Badger determined there was no need to send all the failed meters back to Badger but, that Badger did want GWA to send 12 meters back to Badger headquarters in Milwaukee for testing.

21.     On January 6, 2015, after the 12 meters were inspected by Badger in Milwaukee, Badger committed to replacing the shipment of 4,280 LP meters with the M25 model. The M25 was the alternate model that had previously been offered and priced by Badger during the second phase of the procurement process for the 2012 meter replacement project.

22.     On January 30, 2015, Badger shipped 648 M25 meters by air freight as the first batch of LP meter replacements. The remaining M25 meters to replace the 4,280 LP meters were received by the end of March, 2015.

23.     Over the next two years, an increasing number of LP meters in service, that were tested by GWA's meter personnel, were failing the AWWA new meter standard as well as the 15-year repaired meter standard.

24.     In a face-to-face meeting March 20, 2017 on Guam with GWA General Manager, Badger's Ken Labre stated that Badger was trying to compete in the marketplace with the LP Meter and had moved manufacturing of the meter to a foreign facility and subsequently experienced problems with the LP Meters. Mr. Labre further stated that because of these problems, Badger ceased manufacture of the LP Meters and that Badger had been marketing only M25 meters for some time.

25.     The M25 has been touted by Badger personnel as its "workhorse" and as a replacement for the failing LP Meters appears to be working well for GWA customers under the same conditions that the LP Meters failed.

26.     In August 2017, GWA informed Badger that in addition to the approximately 6,000 LP meters previously identified as failing and requiring replacement, an additional 3,000 meters

LOW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

were found to have failed and needed to be taken out of service. GWA asked that the meters be replaced under warranty.

27.     In response to the August 2017 warranty request, Badger Sales Support Specialist, Tammie Stewart indicated that Badger would continue to honor its obligations under the contract, by replacing the defective LP meters with M25's, stating in an email that "I am having an order placed for 2,760 more [meters] under warranty." GWA relied on Badger's continuing conduct and representations indicating that it intended to remedy the problem with the defective meters.

28.     On October 17, 2017, Geigy Salayon of GWA sent an email marked urgent indicating that the most recent monthly report showed another 1,500 LP failures and that GWA is requesting Badger start sending larger shipments of M25 replacements. Badger was also informed in that email that the revenue losses GWA had calculated from the previous fiscal year was nearly Eight Million Dollars ($8,000,000.00).

29.     On October 18, 2017, Badger informed GWA that Badger had withheld shipment of 2,760 M25 replacement meters for over a month due to a delay in payment for LP meters delivered earlier in the year, even though the M25 meters were supposed to be provided as replacements for defective meters. GWA received the 2,760 warranty replacements on December 12, 2017.

30.     On February 9, 2018, GWA informed Badger that the number of LP meters in service that needed to be replaced under warranty was approximately 23,800.

31.     On March 15, 2018, Badger informed GWA that the warranty replacement program the parties had agreed to in January of 2015 was not going to be honored by Badger any longer and a modified replacement scheme for the faulty LP meters was how the relationship would continue. This new scheme would require GWA to test the meters to the M-6 new meter standard and, if faulty, GWA would pay for the replacement M25 with the electronic transmitting components (which did not transfer from the LP meter) and Badger would credit GWA for the LP meter body at

LOW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

$45.05, which meant the warranty replacement effectively would have cost GWA $98.50 for each failed meter plus shipping and installation costs.

32. On May 29, 2018 GWA informed Badger that the warranty covered all LP meters sold to GWA after November 1, 2012 and that GWA had no intention of paying any amount for the replacement M25's.

33. On June 16, 2018, Badger's Central Regional Manager notified GWA that Badger was researching warranty coverage under the new meter warranty standard and that Badger would look into delivery dates for the failing meters in order to match up warranty coverage on the 5-year standard.

34. On June 27, 2018, Tammie Stewart informed GWA that Badger was "going to run this process a little different going forward." A phone conference and several emails between the parties took place wherein Badger refused a direct warranty replacement and suggested a "cost sharing" scenario.

35. On July 6, 2018, GWA informed Badger that their proposal to share costs was rejected but, that in an effort to put the matter to rest, GWA would be willing to accept 11,110 M25 meters free of charge and GWA would bill Badger for the labor cost of replacement of the meters. The offer was rejected by Badger.

36. Due to Badger's continuing and egregious refusal to abide by its obligations under the Contract, including its duty to replace all of the defective LP meters, any limitation contained in Badger's warranty materials purporting to limit GWA's remedy to the replacement of the defective meters has failed of its essential purpose.

37. Badger concealed and failed to disclose the defective nature of its LP meters. Once the defective nature of the meters and Badger's negligent performance of its services under the Contract became increasingly clear, Badger engaged in misleading and lulling actions and

LAW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

communications designed to prevent Plaintiff from exercising its legal rights, including by falsely suggesting that Badger intended to replace all of the defective LP meters with M25 meters or otherwise take action to resolve the issue to GWA's satisfaction. Badger, by its conduct and representations, sought to dissuade GWA from bringing suit as a result of Badger's breach, and GWA would have brought suit against Badger but for Badger's conduct and representations. Plaintiff justifiably relied on Badger's actions and could not have known or discovered that Badger would instead refuse to honor its agreements. Therefore, Defendants are estopped from relying on any statute of limitations.

38.     Additionally, the running of any statute of limitations has been tolled pursuant to the "discovery rule" under which awareness of an injury or deleterious condition does not equate with the accrual of a cause of action.

39.     Furthermore, Badger's continuing wrongful actions as described herein constitute a cumulative or continuing tort or wrong for purposes of the statute of limitations, such that the statute of limitations did not begin to run until the cessation of Badger's tortious conduct.

## COUNT I - BREACH OF CONTRACT

40.     Plaintiff GWA incorporates each of the allegations set forth in the above paragraphs, the same as if fully set forth herein.

41.     GWA purchased a total of 37,474 LP meters pursuant to GWA RFP-01-ENG-2012 between the years 2012 and 2014 at a cost of $137.30 each for a total of $3,949,876.00 inclusive of shipping costs. The initial contract amount was $4,000,000.00 and is dated March 28, 2012.

42.     The LP meters sold to GWA by Badger failed at alarming rates for both those meters installed and put in service by GWA but also LP meters that were delivered to GPA and were tested before the meters were placed into service.

LOW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

*Guam Waterworks Authority v. Badger Meter Inc. et al; CV _____*
*Complaint*

Page 8 of 17

Case 1:20-cv-00032   Document 1-1   Filed 10/12/20   Page 8 of 17

43. The certified failure rate for a random batch of LP meters sent for testing at the Utah State Water Research Laboratory shows 93% of the LP Meters tested failed the 5-year ("AWWA") warranty standard and 78% of the LP Meters failed the 15-year AWWA standard.

44. Badger sold and delivered defective, faulty or otherwise impaired LP meters to GWA and is in breach of contract to provide working and accurate meters. Badger has further breached its agreement to replace the defective LP meters, all as described above.

45. Due to Badger's continuing and egregious refusal to abide by its obligations under the Contract, including its duty to replace all of the defective LP meters, any limitation contained in Badger's warranty materials purporting to limit GWA's remedy for breach of warranty to the replacement of the defective meters has failed of its essential purpose, and GWA is therefore entitled to recover all damages arising from Badger's breach, including consequential damages.

46. As a direct and proximate result of Badger's breach of contract, GWA was damaged.

47. Badger is liable for breach of contract damages in an amount to be determined at trial in order to compensate GWA for all losses proximately caused by the breach as allowed by 20 G.C.A. § 2201. Badger's damages as currently estimated include the following:

(a)     Replacement costs for purchasing and shipping of the M25 Meters along with incidental materials of at least $3,949,876.00;

(b)     GWA labor costs incurred to replace the failed LP meter inventory with M25 meters of at least $2,458,103.00;

(c)     Lost income to GWA arising from the defective water meters in excess of $12,000,000.00;

(d)     Costs of experts and testing in the amount of $18,900.00; and

(e)     Reasonable attorney's fees, and

(f)     For such other and further relief as the Court deems just.

LAW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

## COUNT II – BREACH OF CONTRACT
## FOR PROFESSIONAL SERVICES

48.     Plaintiff GWA incorporates each of the allegations set forth in the above paragraphs, the same as if fully set forth herein.

49.     Pleading in the alternative, and as set forth above, the Contract entered into by the parties required Badger to utilize the standard of care normally exercised by professional consulting firms in performing comparable services under similar conditions.

50.     Badger knew that GWA was relying on Badger's skill and judgment to furnish appropriate goods under the Contract. Badger was at all times well aware of GWA's intended uses of the LP residential water meter product, including the environmental conditions of Guam, and GWA's needs and expectations were discussed at great length with Badger. Badger was also aware that providing the GWA with defective or inappropriate water meters would result in significant and foreseeable damages to GWA, including loss of revenue and other consequential damages.

51.     The professional consulting services provided by Badger included the recommendation that GWA use the LP meter for its residential water metering needs and Badger's advice that this meter was appropriate and would function properly in the environment of Guam.

52.     Badger knew or should have known that the LP meter was not appropriate and/or that the LP meter was defective and/or would fail to operate properly when put to a reasonably foreseeable use by GWA.

53.     Furthermore, on information and belief, Badger was aware of less expensive water meter options which would have been more appropriate, including its own M25 "workhorse" meter, that it could have recommended and provided, but did not do so in order to maximize its own profits.

54.     Badger thereby violated the applicable standard of care under the Contract in its provision of professional services to GWA.

LAW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

55.     As a direct and proximate result of Badger's breach of contract, GWA was damaged.

56.     Badger is liable for breach of contract damages in an amount to be determined at trial in order to compensate GWA for all losses proximately caused by the breach as allowed by 20 G.C.A. § 2201. Badger's damages as currently estimated include the following:

(a)     Replacement costs for purchasing and shipping of the M25 Meters along with incidental materials of at least $3,949,876.00;

(b)     GWA labor costs incurred to replace the failed LP meter inventory with M25 meters of at least $2,458,103.00;

(c)     Lost income to GWA arising from the defective water meters in excess of $12,000,000.00;

(d)     Costs of experts and testing in the amount of $18,900.00; and

(g)     Reasonable attorney's fees, and

(e)     For such other and further relief as the Court deems just.

## COUNT III – DECEPTIVE TRADE PRACTICES ACT

57.     GWA incorporates each of the allegations set forth in the above paragraphs, the same as if fully set forth herein.

58.     This count is brought by GWA pursuant to the Deceptive Trade Practices Act (DTPA), 5 G.C.A. § 32101 et seq.

59.     5 G.C.A. § 32201(a) provides a private right of action arising from any prohibited act or practice under the DTPA, including but not limited to acts of omission, failure to honor any warranty or agreement with the consumer, or committing any false, misleading or deceptive acts or practices by a merchant to induce a consumer to purchase goods or services. 5 G.C.A. § 32201(b) further provides a private cause of action arising from "any unconscionable action or course of action" by a defendant.

LAW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

*Guam Waterworks Authority v. Badger Meter Inc. et al; CV ____*
Complaint

60.     The refusal to honor a warranty is an unlawful business practice pursuant to 5 G.C.A. § 32202. Additionally, 5 G.C.A. § 32201 provides the following examples, among others, of deceptive and unlawful trade practices under the Act:

(a)     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

(b)     Charging or attempting to charge a consumer for goods or services not provided or not to be provided;

(c)     Charging or attempting to charge a consumer who has previously contracted to buy goods or services additional charges, including taxes, not previously agreed to in the contract as a condition of performance;

(d)     Knowingly representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve;

(e)     Representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve;

(f)     Knowingly making false statements of fact as to the results of purchasing or using goods or services;

(g)     Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed; and

(h)     Doing any other act which is prohibited by the laws of Guam to mislead a consumer to his detriment or to induce another person to buy or sell goods or services to such person's detriment.

LAW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

61.     As set forth above, Badger made false and deceptive statements and actions regarding the characteristics of the water meters and the replacement of those meters. Badger's actions herein as described above and including its wrongful refusal to replace the defective water meters under warranty, constitute unlawful and unconscionable business practices for purposes of the DTPA.

62.     As a direct and proximate result of Badger's unlawful and unconscionable business practices, GWA suffered damages. GWA's damages include the following:

(a)     Replacement costs for purchasing and shipping of the M25 Meters along with incidental materials of at least $3,949,876.00;

(b)     GWA labor costs incurred to prematurely replace the failed LP meter inventory with M25 meters of at least $2,458,103.00;

(c)     Lost revenue to GWA arising from the defective water meters in excess of $12,000,000.00;

(d)     Costs of experts and testing in the amount of $18,900.00;

(e)     Outside counsel fees to be determined at trial;

(f)     Treble damages of three times the value of the goods purchased, or punitive damages of $2,000 per violation, whichever is greater, pursuant to 5 G.C.A. § 32202.

(g)     Court costs and additional reasonable and necessary attorney's fees pursuant to 5 G.C.A. § 32109.

(h)     On information and belief, Badger's conduct was committed knowingly and as a regular business practice, and therefore treble damages of three times the gross profit received by Badger are additionally appropriate pursuant to 5 G.C.A. § 32112.

## COUNT IV - BREACH OF WARRANTY

63.     GWA incorporates each of the allegations set forth in the above paragraphs, the same as if fully set forth herein.

LAW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

*Guam Waterworks Authority v. Badger Meter Inc. et al*; CV ____
Complaint

64.     Furthermore, and pleading in the alternative, the written warranties covering the LP model meters sold to GWA as provided by Badger during the procurement process are as follows:

The meter product will meet or exceed new meter accuracy standards set forth in AWWA Standard C700 for...Five (5) years from the date of shipment or registration of 750,000 gallons, whichever occurs first. The AWWA new meter accuracy standard requires a 98.5 to 101.5 accuracy at a flow rate of 15 and 2 gallons per minute and a 95 to 101 percent accuracy at a flow rate of .25 gallons per minute.

The meter product will meet or exceed the repaired meter accuracy standards set forth in AWWA manual M-6, Chapter 5, Table 5.3 for...15 years from the date of shipment or registration of 2,500,000 gallons, whichever occurs first.

65.     When Badger was notified of the 60% failure rate of the 4,280 new meters delivered in August of 2014, Badger honored the new meter warranty and replaced the failed meters with the M25 model meters. However, upon later notification of an increasing number of failures and the urgent request by GWA to replace the failing LP meters that were in service, Badger refused to honor the LP meters' warranty as falling under the new meter standard, as well as the repaired meter standard for those meters that had been in GWA's possession over five years.

66.     Based on testing and subsequent certification by the Utah State University Water Research Laboratory of a large representative sample of the meters pulled out of service by GWA in 2019, the failure rate under the AWWA M-6 repaired meter standard is an unprecedented 78%.

67.     Due to Badger's continuing and egregious refusal to abide by its obligations under the Contract, including its duty to replace all of the defective LP meters, any limitation contained in Badger's warranty materials purporting to limit GWA's remedy for breach of warranty to the replacement of the defective meters has failed of its essential purpose, and GWA is therefore entitled to recover all damages arising from Badger's breach, including consequential damages.

LAW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

*Guam Waterworks Authority v. Badger Meter Inc. et al; CV ____*
Complaint

68. As a direct and proximate result of Badger's breach of its warranty, GWA has been damaged.

69. GWA has provided Badger with reasonable notice of its breach of warranty.

70. Badger has failed to honor its written warranty to replace the failed LP meters and is therefore liable for the replacement value of the meters to be determined at trial as set forth in 20 G.C.A. § 2213. Badger is further entitled to incidental and consequential damages arising from Badger's breach of warranty under applicable law, including pursuant to 13 G.C.A. § 2714 and 13 G.C.A. § 2715, and including compensation for all losses incurred by GWA in purchasing, installing and replacing the failed meters, as well as lost revenue.

## COUNT V – BREACH OF WARRANTY
## FOR A SPECIAL PURPOSE

71. GWA incorporates each of the allegations set forth in the above paragraphs, the same as if fully set forth herein.

72. In addition, and in the alternative, Badger has breached its warranty of fitness for a particular purpose by providing the defective meters and refusing to replace them.

73. Badger had reason to know of GWA's particular purpose in purchasing the water meters, as GWA's needs and expectations were discussed at great length prior to Badger providing the defective meters.

74. Badger also had reason to know that GWA was relying on Badger's skill or judgment to furnish appropriate goods, and GWA in fact relied on that skill or judgment in the selection of the LP meters.

75. As a direct and proximate result of Badger's breach of its warranty, GWA has been damaged.

76. GWA has provided Badger with reasonable notice of its breach of warranty.

LAW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

77.     As a result of this breach, Badger is liable for damages to be determined at trial including the replacement value of the meters as set forth in 20 G.C.A. § 2213. Badger is further entitled to incidental and consequential damages arising from Badger's breach of warranty under applicable law, including pursuant to 13 G.C.A. § 2714 and 13 G.C.A. § 2715, and including compensation for all losses incurred by GWA in purchasing, installing and replacing the failed meters, as well as lost revenue.

## COUNT VI – UNJUST ENRICHMENT

78.     GWA incorporates each of the allegations set forth in the above paragraphs, the same as if fully set forth herein.

79.     Pleading in the alternative, Badger received a benefit from GWA as a result of its supply of the defective and inappropriate LP water meters and from its negligent provision of professional services to GWA.

80.     As set forth above, Badger falsely or recklessly represented its expertise, the characteristics of its products and the appropriateness of the LP meters for use by GWA, all in order to maximize its own profits. As a result, GWA has been damaged as set forth above.

81.     For these reasons, Badger has been unjustly enriched. Retention of the benefits Badger has received from GWA would be unjust and inequitable under the circumstances.

82.     GWA is therefore entitled to restitution of all benefits conferred on Badger.

## COUNT VII – DIRECT ACTION

83.     GWA incorporates each of the allegations set forth in the above paragraphs, the same as if fully set forth herein.

LOW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

84.     Defendant Doe Insurance Companies 1, 2 and 3 are the insurers, providers of policies of insurance, and/or are entities engaged in insurance related business that had issued insurance coverage, policies of insurance, and/or other insurance related coverage to Badger which was in full force and effect at all pertinent times herein, covering Badger's conduct complained of herein that directly and proximately caused the injuries, harm and damages to GWA.

85.     As the insurers, provider of policies of insurance and/or as an entities engaged in insurance related business that had issued insurance coverage, policies of insurance, and/or other insurance related coverage to Badger, Defendant Doe Insurance Companies 1, 2 and 3 are liable to GWA for all injuries, harm and damages alleged upon the terms and limits of the policy up to the limits of the policy.

86.     GWA has a right of direct action against Defendant Doe Insurance Companies 1, 2 and 3 on any policy or policies of insurance issued to or covering Badger which were in effect at all pertinent times herein, pursuant to, *inter alia*, 22 G.C.A. § 18305, including primary and excess coverages.

**WHEREFORE** Plaintiff Guam Waterworks Authority prays that the Court enter judgment in its favor, award Plaintiff GWA its damages herein in an amount to be proven at trial; award Plaintiff GWA statutory, punitive and/or treble damages as permitted by law; award Plaintiff GWA its costs and reasonable attorney's fees, with interest; and for any other relief the Court deems just and proper.

**DATED** this 31ˢᵗ day of August, 2020.

BY: _____
**VINCENT LEON GUERRERO**
*Attorney for Plaintiff Guam Waterworks Authority*

LOW OFFICE OF
VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
687-5974

*Guam Waterworks Authority v. Badger Meter Inc. et al*; CV ____
Complaint

Page 17 of 17