# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| GUAM WATERWORKS AUTHORITY,<br><br>Plaintiff,<br><br>vs.<br><br>BADGER METER, INC., and DOE INSURANCE COMPANIES 1, 2 and 3,<br><br>Defendants. | CIVIL CASE NO. 20-00032<br><br>**DECISION & ORDER<br>RE: CROSS MOTIONS FOR JUDGMENT<br>ON THE PLEADINGS** |

Before the court are cross motions for judgment on the pleadings. *See* ECF Nos. 22-23. For the reasons stated herein, Plaintiff Guam Waterworks Authority's ("GWA") Motion for Judgment on the Pleadings is **DENIED**; and Defendant Badger Meter Inc.'s ("BMI") Counter Motion for Judgment on the Pleadings is **DENIED**.

I. **Factual and Procedural Background**

This action primarily concerns the alleged purchase, defective operation, and warranty regarding residential water meters. GWA allegedly contracted with BMI to purchase residential water meters and related parts. Compl. ¶¶ 7-10, 12, ECF No. 1-1. GWA alleges that between 2012 and 2014, it purchased a total of 37,474 "LP" water meters and that these meters failed at a high rate. *Id.* ¶¶ 19, 23, 26, 28, 30, 41. GWA alleges that BMI failed to satisfy its warranty

1

obligations with respect to those meters. *Id.* ¶¶ 31, 34, 36.

On August 31, 2020, GWA filed a complaint against BMI in the Superior Court of Guam. *See generally, id.*, ECF No. 1-1. On October 12, 2020, BMI removed the action from the Superior Court of Guam to this court. Notice of Removal, ECF No. 1. On October 29, 2020, BMI answered the Complaint. Answer, ECF No. 12. In its answer, BMI disputes the claims, denies a majority of the allegations, and raises six affirmative defenses. *Id.* Pertinent to these cross motions are BMI's fourth and sixth affirmative defenses.

On April 7, 2021, GWA filed its Motion for Judgment on the Pleadings. Pl.'s Mot., ECF No. 22 ("Motion"). Therein, GWA seeks judgment on the pleadings for Count III, violation of the Deceptive Trade Practices Act – Consumer Protection Act ("Deceptive Trade Practices Act"). *Id.* On April 28, 2021, BMI filed its Counter Motion for Judgment on the Pleadings. Def.'s Mot., ECF No. 23 ("Counter Motion").

**II. Discussion**

    **a. Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A court evaluating a Rule 12(c) motion must construe factual allegations in a complaint in the light most favorable to the nonmoving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Under Rule 12(c), "'[j]udgment on the pleadings is properly granted when, accepting all factual allegations as true, there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming*, 581 F.3d at 925).

"Although, as a general rule, a district court may not consider material not originally included in the pleadings in deciding a Rule 12 motion, Fed. R. Civ. P. 12(d), it may take judicial notice of matters of public record and consider them without converting a Rule 12 motion into one for summary judgment." *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (internal quotations and citations omitted). Courts may take judicial notice *sua sponte*. Fed. R. Evid. 201(c)(1). Courts may take judicial notice of the legislative history of state statutes. *See, e.g., Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (taking notice of a state statute's legislative history); *Louis v. McCormick & Schmick Rest. Corp.*, 460 F. Supp. 2d 1153, 1155 n.4 (C.D. Cal 2006) (taking judicial notice of portions of legislative history and opinion letters issued by federal and state agencies).

    **b. GWA's Motion**

GWA claims that BMI violated the Deceptive Trade Practices Act. Compl. ¶¶ 57-62, ECF No. 1-1. Specifically, GWA alleges that BMI made "false and deceptive statements and actions regarding the characteristics of the water meters and the replacement of those meters." *Id.* ¶ 61. GWA further alleges that BMI's "actions herein as described above and including its wrongful refusal to replace the defective water meters under warranty, constitute unlawful and unconscionable business practices for purposes of the DTPA." *Id.* GWA alleges that it has suffered various harms as a result of BMI's violation of the Deceptive Trade Practices Act. *Id.* ¶ 62. BMI denies these allegations. Answer ¶¶ 61-62, ECF No. 12. BMI also raises six affirmative defenses, two of which GWA believes relate to Count III: BMI's fourth and sixth affirmative defenses. *Id.* ¶¶ 87-97.

BMI's fourth affirmative defense argues that "GWA is not a consumer within the meaning of the Guam Deceptive Trade Practices Act – Consumer Protection Act and thus lacks standing to sue under the Act and therefore fails to state a claim upon which relief can be

3

Case 1:20-cv-00032   Document 36   Filed 03/28/22   Page 3 of 13

granted." *Id.* ¶ 94.

BMI's sixth affirmative defense argues that "GWA's tort claims are barred, in whole or in part, by the economic loss doctrine, in that the losses that GWA claims to have suffered are purely economic or commercial in nature and arise out of the contractual relationship between GWA and Badger Meter." *Id.* ¶ 96.

"[U]nder Federal Rule of Civil Procedure 12(c), a plaintiff is not entitled to judgment on the pleadings if the defendant's answer raises issues of fact or affirmative defenses." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1159 (9th Cir. 2015) (citing *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989)).

Here, BMI's Answer raises six affirmative defenses, two of which GWA believes are directly related to Count III. Therefore, GWA is not entitled to judgment on the pleadings on Count III and its Motion is **DENIED.**

   c. **BMI's Counter Motion**

BMI simultaneously opposes GWA's Motion and raises its own Counter Motion with respect to Count III.[1] Counter Mot. at 2, ECF No. 24. Specifically, BMI argues that while the "DTPA's definition of a 'consumer' includes 'the government of Guam,' [] GWA is not 'the government of Guam.' Rather, as an autonomous agency and public corporation with gross assets in excess of $1 billion, GWA falls squarely within the class of a 'business consumer' that the DTPA excludes from its definition of 'consumer.'" *Id.* at 2:9-14. Conversely, GWA argues that, as an "agency, instrumentality, or otherwise an official body of the Government of Guam,"

---
[1] BMI attached nearly 400 pages as an "Appendix" to its Counter Motion. ECF No. 24-1. BMI also filed a declaration in support of its Counter Motion with two exhibits, totaling over 100 pages. ECF No. 25. The court will not consider these filings for purposes of the instant motion. A motion for judgment on the *pleadings* is confined to, axiomatically, the pleadings. Analysis of these documents would transform, under Fed. R. Civ. P. 12(d), the Counter Motion into a motion for summary judgment. "Pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *see also* Fed R. Civ. P. 7(a) ("Pleadings" defined).

4

it "falls within the definition of the Government of Guam as used in 5 GCA § 32103 of the DTPA." Mot. ¶ 13, ECF No. 22-1.

An "aggrieved consumer" may bring a claim for any prohibited act enumerated in the Deceptive Trade Practices Act, including but not limited to failure to honor any warranties or agreements, or committing any false or deceptive act to induce a consumer to purchase goods or services. 5 Guam Code Ann. § 32111. The definition of a "consumer" includes the "government of Guam" but excludes any "business consumer" with assets of more than $25 million. *Id.* § 32103(d). Notably, the statute does not define the "government of Guam." Thus, the key issue on this cross motion is whether GWA is the "government of Guam" for purposes of the Deceptive Trade Practices Act.

"When interpreting a statute, we are guided by the fundamental canons of statutory construction and begin with the statutory text. We interpret statutory terms in accordance with their ordinary meaning, unless the statute clearly expresses an intention to the contrary. We must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015) (internal citation and quotations omitted). Where a statute's language is not dispositive, we look to the congressional intent revealed in the history and purposes of the statutory scheme. *U.S. Aviation Underwriters Inc. v. Nabtesco Corp.*, 697 F.3d 1092, 1098 (9th Cir. 2012).

The term "government of Guam" within the Deceptive Trade Practices Act is ambiguous as to whether it includes public corporations such as GWA. Since the term is not dispositive, the court will first analyze the legislative intent revealed in the history and the purpose of the Deceptive Trade Practices Act. Thereafter, the court will take judicial notice of the GWA Act (12 Guam Code § 14101 *et seq*.) and analyze its legislative history and intent. Finally, the court

5

will analyze whether GWA is the "government of Guam" for purposes of the Deceptive Trade Practices Act.

### i. Legislative History of Deceptive Trade Practices Act

On May 10, 1991, the Deceptive Trade Practices Act was enacted into law. Guam Pub. L. 21-18 (1991). The definition of "consumer" has remained unchanged since the statute's enactment. 5 Guam Code Ann. § 32103(d).

In creating the Deceptive Trade Practices Act, the Guam Legislature provided instructions for statutory interpretation. Pertinently, the opening statute states that the Deceptive Trade Practices Act "shall be liberally construed so that its beneficial purposes may be accomplished." *Id.* §32101. Another provision reiterates that the statute "shall be liberally construed in favor of the consumer and shall be applied to promote its underlying purposes...." *Id.* § 32108(a). Both of these statutes have also remained unchanged since their inception.

Section 32103, entitled "Definitions," was amended twice after inception, but those amendments are inapplicable to the key issue.[2]

### ii. Legislative History of GWA

On July 31, 1996, the Guam Waterworks Authority was established. Guam Pub. L. 23-119 (1996). GWA's original enabling statute, Section 14103, stated that "[t]here is *within*, and *a public corporation* and autonomous instrumentality *of*, the government of Guam, a Guam Waterworks Authority." *Id.* § 1 (emphasis added). This provision was, and still is, codified in Title 12 of the Guam Code, entitled "Autonomous Agencies."

Since its original enactment, the Guam Legislature attempted to repeal and reenact Section 14103 through Bill 241 with the following pertinent language:

There is established, as a non-stock, non-profit corporation on Guam, a Guam

---

[2] Guam Pub. L. 22-34 (1993) and Guam Pub. L. 35-74 (2020) amended the Deceptive Trade Practices Act to prohibit price gauging after natural disasters. Section 32103 was amended to include a definition for "disaster."

> Waterworks Authority. All employees shall be eligible for all insurance, retirement, workmen's compensation and other benefits as extended to the employees of the Government of Guam, and shall be employees of the government of Guam for the purposes of the application of all civil service laws and personal rules and regulations as apply to government of Guam employees…. The corporation as established herein belongs fully and exclusively to the People of Guam.

Bill 241, 26th Guam Leg., 1st Reg. Sess. (2001).

While this version of Bill 241 was vetoed by the Governor, the Guam Legislature passed a different version of the bill that was subsequently signed into law by the Governor. *See Certification of Passage of an Act for Bill 241* (COR); letter dated December March 13, 2002, from Governor Carl C.T. Gutierrez to Legislative Secretary Joanne M.S. Brown. As a result, Section 14103 was repealed and reenacted, reading as follows in its current form: "Guam Waterworks Authority is *continued in existence* as a public corporation." 12 Guam Code Ann. § 14103 (as amended by Guam Pub. L. 26-76, § 3 (2002)) (emphasis added).

In addition to removing reference to the "government of Guam" in GWA's enabling statute, the Legislature also changed the governing structure of GWA. Originally, Section 14105 established a board of directors and provided them with "[a]ll powers vested in the [GWA]." Guam Pub. L. 23-119, § 1 (1996). That board consisted of "directors, nominated and appointed by the Governor of Guam, by and with the advice and consent of the Guam Legislature." *Id.*

However, the repeal and reenactment of Section 14105 in 2002 changed the governing structure of GWA. GWA and the Guam Power Authority were reorganized under an elected Consolidated Commission on Utilities ("Commission"), which was vested with "powers as have heretofore been exercised by the respective boards of directors of said authorities." Guam Pub. L. 26-76, § 1 (2002). The Commission's enabling statute states as much, "[t]here is established an elected Consolidated Commission on Utilities whose purpose is to exercise the powers vested in them by the laws establishing the…Guam Waterworks Authority ('GWA')." 12 Guam Code Ann. § 79100. The Commission is not nominated and appointed by the Governor of Guam, as

7

GWA's board of directors once was, but rather "elected at-large by the voters of Guam in a General election." *Id.* §79101. Other than amendments to the definitions provisions, the enabling statute, and its governing structure, no other changes were made to the GWA Act by Guam Public Law 26-76. *See* Guam Pub. L. 26-76, §§ 2-4 (2002).

In addition to the changes in GWA's enabling statute and its governing structure, the court has located eight statutory provisions contained within the GWA Act (12 Guam Code § 14101 *et seq*.), and five statutory provisions outside the GWA Act, that reference both the GWA and the government of Guam. The court separates these laws in two groups. Group 1 supports a finding that GWA is distinct from the government of Guam; whereas Group 2 supports a finding that GWA is within and part of the government of Guam.

**Group 1:**

- Section 14104(h) of the GWA Act states that GWA has the power "to enter into contracts with the government of Guam…." 12 Guam Code Ann. § 14104(h).

- Section 14505 states that GWA has first priority to utilize water, whereas the government of Guam has second priority. *Id*. § 14505.

- Section 14206 states that any bond issued or sold by GWA shall not become a "lien, charge or liability against the government of Guam *or* against the Authority or against any property or funds of the government of Guam *or* the Authority." *Id*. § 14206 (emphasis added).

- Section 14104(f) states that GWA has "the same powers with respect to the construction of such works as possessed by the government of Guam." *Id*. § 14104(f).

**Group 2:**

- 5 Guam Code Ann. § 6102, which defines the coverage of the Government Claims Act, states that it applies to "the entire government of Guam," explicitly including GWA in that definition.

- 5 Guam Code Ann. § 6103 defines the "Government of Guam" as "all agencies, departments, instrumentalities, *public corporations*, and all other entities of the government…" for purposes of the Government Claims Act. (Emphasis added).

- 5 Guam Code Ann. § 12104 defines the Purpose and Policy of the Modernization and Rightsizing Commission of the Government of Guam, which is to promote efficiency "in

8

the Executive Branch of the government of Guam, include all line agencies and the…Guam Waterworks Authority."

- 1 Guam Code Ann. § 1921 authorizes the Public Auditor within the Office of Public Accountability to supervise or perform audits "of autonomous agencies and instrumentalities of the government of Guam, inclusive of, but *not limited to*, the…Guam Waterworks Authority."

- 12 Guam Code Ann. § 50103 states that the Guam Economic Development and Commerce Authority shall be "the financial planner and investment banker for all agencies and instrumentalities of the Government, to include, but not be limited to, such public corporations as … the Guam Waterworks Authority."

- Section 14229 states that the "government of Guam is fully committed to ensuring that the Authority" is able to implement capital improvements. *Id*. § 14229.

- Section 14408 states that the Governor of Guam is authorized to transfer funds from "Special Funds of the Executive Branch of the government of Guam … to GWA." *Id*. § 14408.

- Section 14114 states that GWA shall contribute to the government of Guam Retirement Fund. *Id.* § 14114.

- Section 14109.5 states that all employees of the Authority shall be eligible for all the "benefits as extended to employees of the government of Guam and shall be employees of the government of Guam for the purposes of the application of all civil service laws and personnel rules and regulations that apply to government of Guam employees." *Id.* § 14109.5.

In sum, the court takes judicial notice of three distinct factors: GWA's enabling statute and its legislative history; GWA's governing structure and its legislative history; and thirteen statutes, both within and outside of the GWA Act, that refer to GWA and the government of Guam.

### d. GWA is Part of the government of Guam for Purposes of the Deceptive Trade Practices Act

The court finds that GWA is part of the government of Guam for purposes of the Deceptive Trade Practices Act. In isolation and with a narrow construction, some statutes support a finding that GWA is not a part of the government of Guam. However, because the Deceptive Trade Practices Act must be "liberally construed," 5 Guam Code Ann. § 32101, and

9

because statutes must be interpreted "as a whole," *Neal*, 776 F.3d at 652, the court finds that GWA remains a part of the government of Guam. The three distinct factors identified above support such a finding.

### i. The Enabling Statute

First, the history of GWA's enabling statute indicates the legislature's intent to maintain GWA within the government of Guam. The purposeful omission of language stating that GWA was "within" and a part "of" the government of Guam, alone, seemingly indicates the Legislature's intent to remove GWA from the government of Guam. However, when interpreted as a whole and in conjunction with other statutes, the court finds that the omission of such language does not remove GWA from the government of Guam.

At its inception, Section 14103 identified that GWA was undoubtedly "within, and *a public corporation … of*, the government of Guam." Guam Pub. L. 23-119, § 1 (1996) (emphasis added). Today, it is "*continued* in existence as *a public corporation*." 12 Guam Code Ann. § 14103 (emphasis added). The Legislature's use of the word "continued" is instructive. It indicates the Legislature's intent in not only explicitly "continu[ing]" GWA's existence as a public corporation, but one that continues to be a part of the government of Guam. Notably, the Legislature amended only three of the GWA Act's original twenty-three statutes: the "Definitions" statute (12 Guam Code Ann. § 14102), the enabling statute (*Id.* § 14103), and the governing structure statute (*Id.* § 14105). Guam Pub. L. 23-119, § 2-4 (1996). Crucially, the Legislature did not alter GWA's substantive duties, responsibilities, roles, or otherwise practically alter GWA's relationship to the government of Guam. Because GWA was explicitly a part of the government of Guam at its inception, and because GWA's duties, responsibilities, and roles today are the same as they were at its inception, the court finds that the minimal changes to the enabling statute support a finding that GWA "continue[s]" to be a part of the government of

Guam.

### ii. The Governing Structure

Second, the changes to GWA's governing structure support a similar finding. At its inception, GWA was governed by a board of directors who were "nominated and appointed by the Governor of Guam, by and with the advice and consent of the Guam Legislature." Guam Pub. L. 23-119, § 1 (1996). Such a process clearly indicates executive and legislative branch oversight, which in turn, indicates that GWA functioned within the government of Guam. Today, however, GWA is governed by a Commission, whose members are "elected at-large by the voters of Guam in a General Election." 12 Guam Code Ann. §79101. While the process has changed, the Commission is vested with the same "powers as have heretofore been exercised by the respective boards of directors of said authorities." Guam Pub. L. 26-76, § 1 (2002). The court finds that this blend of changing GWA's governing structure, while maintaining its substantive powers, supports a finding that GWA remains a part of the government of Guam. The change in governing structure removes executive and legislative oversight, which alone, seems to remove GWA from the government of Guam. However, the election of members by the public at-large reflects a democratic, and consequently governmental, process in and of itself. Here, the entire voting population of Guam has the opportunity to determine who will oversee this public corporation – much in the same way that they have the opportunity to determine who will be their governor, their legislators, their attorney general, and their public auditor. Far from removing GWA from the government of Guam, the amendment places Commission members on equal elective footing with, rather than subordinate to, governors and legislators. Moreover, the fact that GWA's role, responsibilities, or duties did not change with the amendment of its governing structure bolsters its continued existence as part of the government of Guam. Thus, the court finds that the change in governing structure, which expands the general population's

participation in the management of GWA, while maintaining the same powers and responsibilities as it had when it was managed by a board of directors appointed by the governor and confirmed by the legislature, indicates the Legislature's intent to keep GWA within the government of Guam.

### iii. The Surrounding Statutes

Third and finally, the court finds that more statutes support a finding that GWA is part of the government of Guam than those that don't. While the court finds that the statutes in Group 1 explicitly distinguish between GWA and the government of Guam, these are outweighed by the statutes in Group 2 that either explicitly incorporate GWA within the government of Guam, or otherwise indicate that GWA is within the government of Guam.

The strongest statute in favor of a finding against GWA being a part of the government of Guam is Section 14104(h) of the GWA Act, which states that GWA has the power "to enter into contracts with the government of Guam…" 12 Guam Code Ann. § 14104(h). The court concedes that this, *alone*, would conclusively determine that GWA is not within the government of Guam. However, there are five statutes that explicitly state that GWA is within or part of the government of Guam. *See* 5 Guam Code Ann. § 6102; *Id*. § 6103; *Id*. § 12104; 12 Guam Code Ann. § 50103; 1 Guam Code Ann. § 1921. When viewed in the context of these five statutes, Section 14104(h) provides a logical inference that an autonomous agency of the government of Guam may enter into contracts with not only other branches of the government, but with the government at-large.

For instance, Sections 14408 and 14229 not only indicate that one branch or agency may enter into a contract with another branch, agency, or the entirety of the government of Guam, they also support a finding that GWA is within the government of Guam by virtue of the government's actions. The fact that the government may transfer funds or capital, *by statute*, to a

12

Case 1:20-cv-00032   Document 36   Filed 03/28/22   Page 12 of 13

"corporation" makes that corporation more of a "public corporation … of, the government Guam" than one outside the government of Guam.

In addition, two more statutes support the finding that GWA operates as part of the government of Guam. Section 14114 states that GWA shall contribute to the government of Guam Retirement Fund. *Id.* § 14114. Section 14109.5 states that all employees of the Authority shall be eligible for all the "benefits as extended to employees of the government of Guam, and shall be employees of the government of Guam for the purposes of the application of all civil service laws and personnel rules and regulations that apply to government of Guam employees." *Id.* § 14109.5. Providing the same employment benefits to employees of GWA and to other government of Guam employees clearly shows that the Guam Legislature envisioned a public corporation belonging to the government of Guam.

In sum, the enabling statute, the governing structure, and the aforementioned thirteen statutes, *collectively*, support a finding that GWA is within, and a public corporation of, the government of Guam for purposes of the Deceptive Trade Practices Act.

### e. GWA Does Not Have Standing to Pursue its Deceptive Trade Practices Act Claim

Because the court finds that GWA is within, and part of, "the government of Guam" for purposes of the Deceptive Trade Practices Act, GWA may pursue its Deceptive Trade Practices Act claim against BMI as a "consumer." Therefore, the court **DENIES** BMI's Counter Motion.

### III. Conclusion

Based on the foregoing, GWA's Motion for Judgment on the Pleadings is **DENIED;** and BMI's Counter Motion for Judgment on the Pleadings is **DENIED**.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
Chief Judge
Dated: Mar 28, 2022