VINCENT LEON GUERRERO
P.O. BOX 12457
TAMUNING, GUAM 96931
TELEPHONE: (671) 687-5947

WILLIAM T. DOWD (Pro Hac Vice)
ALEX R. LUMAGHI (Pro Hac Vice)
LAURA G. LUMAGHI (Pro Hac Vice)
RACHEL K. DOWD (Pro Hac Vice)
211 North Broadway, Suite 4050
St. Louis, Missouri 63102
Tel: 314-621-2500
Fax: 314-621-2503

*Attorneys for Plaintiff Guam Waterworks Authority*

**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| GUAM WATERWORKS AUTHORITY,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>BADGER METER, INC., et. al.<br><br>　　　　　　Defendants. | CIVIL CASE NO. CV20-00032<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION OF GUAM WATERWORKS AUTHORITY TO EXCLUDE THE TESTIMONY AND OPINIONS OF J. BRADLEY SARGENT** |

COMES NOW Plaintiff Guam Waterworks Authority, by and through Counsel, and for its Reply Memorandum in Support of Motion to Exclude the Testimony and Opinions of J. Bradley Sargent, states as follows:

I.  **MR. SARGENT'S TESTIMONY SHOULD BE EXCLUDED BECAUSE BAGDER'S OPPOSITION DEMONSTRATES THAT IT CONSCIOUSLY VIOLATED THE SETTLEMENT/MEDIATION PRIVILEGE AND GWA'S WORK-PRODUCT PRIVILEGE.**

A. **BADGER CONCEDES THAT IT PROVIDED CONFIDENTIAL SETTLEMENT MATERIALS, INCLUDING A DRAFT DAMAGE MODEL, TO ITS TESTIFYING EXPERT AFTER GWA EXPRESSLY INDICATED THAT THE MATERIALS WERE *ONLY* FOR SETTLEMENT PURPOSES AND *NOT* FOR DISCOVERY.**

As part of the mediation process Badger requested to look at how GWA was generating its draft damage model. GWA's counsel was extremely reluctant to provide an "inside look" at Plaintiff's damages expert's privileged work-product months before Badger was entitled to any such information. Counsel thus cautioned Badger that the material was being provided **solely for mediation and settlement and not for purposes of discovery**. See Dowd Decl. Ex. 1, Dowd Email November 8, 2021. Badger turned around and **used the information for purposes of discovery** by providing it to Badger's testifying expert.[1]

Badger does not contest any of this. It does not contest that the materials were provided at Badger's request as part of the mediation process. Badger does not contest that GWA's counsel cautioned it *not* to use the materials outside of mediation or for purposes of discovery. Badger does not contest that it nevertheless *did* provide those confidential settlement materials, including the draft damage model, to its expert. Badger does not contest that the materials were considered by Sargent but not disclosed in Sargent's Rule 26 Report, in violation of Rule 26. Badger does not contest that it was in possession of a list of documents Sargent actually *had* considered but did not provide it to GWA in advance of Sargent's deposition and until GWA's counsel discovered that

---

[1] Badger contends it did not use these mediation materials but does not explain how providing materials to be considered by a testifying expert does not constitute use of the materials for discovery purposes. Its decision to provide the materials to the expert it intended to call for trial was in direct violation of the condition GWA's counsel placed on GWA providing these materials in response to Badger's request solely for purposes of mediation.

Sargent had not previously disclosed all of the materials he considered in violation of Rule 26.

Instead, Badger's response to these facts is "we did it and we'd do it again." Badger's response is bereft of any indication that the disclosure was an oversight, or any other explanation. Furthermore, Badger asserts that the documents are "not privileged," they did not breach the Mediation Agreement signed by the parties, and the *only* limit on their use is that the materials themselves cannot be offered as evidence at trial under Rule 408. Evidently, Badger believes it could provide GWA's draft damage model to any third party as it pleases. See Dkt. No. 107, Memo. in Opp. at 9 ("although the documents are inadmissible at trial, they are neither confidential nor privileged.") As set forth herein, the position that Badger did nothing wrong is indefensible and Mr. Sargent's testimony should be excluded.

**B. PLAINTIFF'S DRAFT DAMAGE MODEL WAS CLEARLY PRIVILEGED AND GWA DID NOT WAIVE ANY SUCH PRIVILEGE BY PROVIDING THE MATERIALS TO BADGER STRICTLY FOR PURPOSES OF SETTLEMENT AND NOT FOR DISCOVERY.**

With regard to its violation of mediation privilege, Badger engages in a tortured argument to reach its desired conclusion that neither federal nor Guam mediation privilege law, nor apparently any other legal principles, apply to its conduct. Badger argues that the cases cited by GWA are not controlling because they apply federal common law regarding the mediation privilege. However, Badger does not provide the Court with any Guam case law indicating that Guam would reject the reasoning or common law legal principles as set forth by the federal courts in the cases cited by GWA.

In any event, having conceded that Guam law applies,[2] Badger is faced with the fact that Guam law clearly *does* adopt the same policies and principles as in the cases cited by GWA, and

---

[2] Badger also suggests that Minnesota law may apply to the mediation agreement between the parties, due to the mediator's location in Minnesota. However, Badger does not pursue this argument as Minnesota law recognizes the same principles as federal and Guam law on this issue.

recognizes equally that mediation materials are privileged. While Badger bends over backwards to try to escape these legal principles, Guam law is clear in establishing a policy that mediation discussions are to remain confidential and privileged, and that parties are **not to attempt to use mediation communications for other purposes**, in particular to obtain an advantage in related litigation.[3]

Thus, after arguing that Guam law rather than federal law applies, Badger turns around and immediately argues that the Guam mediation statute in Chapter 43A does *not* apply to it because it purportedly only applies to parties who "agree to participate in mediation under this Chapter 43A." However, this is merely a reference in the statute to the fact that Chapter 43A applies to privately agreed-upon mediations to which Guam law applies, and not the court-ordered mediations covered by Chapter 43B of the Guam Code. Badger's self-serving argument that Guam privilege law both applies and does not apply should be disregarded by the Court.

In any event, and separate from Chapter 43A, Badger is forced to concede that a mediation privilege indeed exists under Guam law, in that it is expressly recognized by Guam Rule of Evidence 504.2, which provides in relevant part as follows:

> **Any communications relating to the subject matter of the resolution process by any participant, mediator, or other person present at the dispute resolution shall be privileged communication**. [Emph. suppl.]

---

See M.S.A. § 595.02(m) ("A person cannot be examined as to any communication or document, **including work notes,** made or used in the course of or because of mediation pursuant to an agreement to mediate or a collaborative law process pursuant to an agreement to participate in collaborative law. … This paragraph is not intended to limit the privilege accorded to communication during mediation or collaborative law by the common law.") See also *Dedefo v. Wake*, 2006 WL 389738, at *3 (Minn.App. 2006)("**the legislature has decided to encourage use of an alternative dispute resolution process and that documents and activity incident to that process are privileged**…This is a public policy conclusion we respect and apply.") [Emph. suppl.]

[3] See 7 G.C.A. § 43A201 ("no document prepared for the purpose of, or in the course of or pursuant to, the mediation, nor any copy thereof, is admissible in evidence, and disclosure of any such document shall not be compelled in any arbitration or civil action in which, pursuant to law, testimony may be compelled to be given.")

The Guam Rules of Evidence, promulgated by the Guam Supreme Court,[4] are plainly an accurate statement of Guam law regarding mediation privilege, as Badger cannot deny. Instead, Badger again tries to avoid the plain meaning of the Rule by arguing that (1) the protection provided in another part of the rule to mediator's materials means that the *parties'* materials are not privileged; and (2) that the Rule only applies to persons physically "present at the dispute resolution."

The fact that Badger is trying to drum up inconsistencies by any means possible to argue that no mediation privilege applies is demonstrated by Badger's focus on the language in the rule relating to the mediator's materials. Badger relies on protections provided to the mediator's "memoranda, work products, or case files" to argue that no such protection applies to parties to the mediation. But there is no necessary conflict between the two parts of the rule, which both protects "memoranda, work product or case files" of the mediator *and* recognizes the mediation privilege for communications by participants in mediation. Indeed, the mediation materials improperly shared by Badger here *would* be exactly such documents in the mediator's "case file," in that both GWA's mediation brief and the draft damage model were shared with both Badger's counsel *and* the mediator. See Dowd Decl. Exs. 1 and 2, Dowd Emails.

Badger's suggestion that a party must be *physically present* at a mediation to be entitled to protection under the rule is ridiculous, particularly in a day when electronic communications are routinely used as a stand-in for physical presence. GWA and Badger both appeared (either in person or via video conference) for the mediation. The mediator was himself a party to each of these communications, showing that they were part of the mediation process and not outside of it.

---

[4] The current Guam Rules of Evidence were promulgated by the Supreme Court of Guam in Promulgation Order No. 06–001 (Jan. 1, 2006).

See Dowd Decl. Exs. 1 and 2, Dowd Emails. These documents on their face are "**communications relating to the subject matter of the resolution process**" by a participant to the mediation, and therefore fall within the plain language of the Rule.

Furthermore, the mediation materials are work-product privileged and GWA did not waive that privilege when they provided materials *expressly and solely for purposes of mediation* and not for any other purpose. Badger was surely aware that Plaintiff's draft damage model, which its testifying expert Mr. Stanger was still in the midst of preparing, was protected work-product. "Amended Rule 26 provides work product protection for draft reports and disclosures required under Rule 26(b)(3)(A) and (B), regardless of the form in which the draft is recorded." *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 512 (N.D.Cal., 2012), citing FED. R. CIV. P. 26(b)(4)(B).

GWA's Memorandum in Support of its Motion to Exclude Mr. Sargent repeatedly pointed out that the draft damage model materials were work-product privileged materials. Badger's response provides no analysis of whether the materials were work-product, thereby conceding the issue. Instead, Badger seems to hint that GWA voluntarily waived work-product protection for the materials when it provided the materials to Badger in the mediation process without marking them privileged. Yet Badger's response is nearly devoid of discussion of waiver principles or how they purportedly apply to the facts of this case.

For instance, Badger seeks to distinguish GWA's reliance on *Akamai Techs., Inc. v. Digital Island, Inc.*, No. C-00-3508 CW(JCS), 2002 WL 1285126, at *7 (N.D. Cal. May 30, 2002) by pointing to the fact that a fax cover sheet in that case referenced the attorney-client privilege, but not the work-product privilege. But that is an insufficient basis to distinguish *Akamai*, which is directly on point. There, the defendant sought to compel materials that had previously been

provided during mediation, arguing that any privilege had been waived. The plaintiff argued that "it did not waive the attorney-client **or work product privileges** because there was an implied contract between Mr. Judson and Mr. Lasky that the Damages Memorandum would be used solely for the purpose of negotiating a settlement." *Id*. at *3. [Emph. suppl.]

The court held that there was no clear evidence of waiver, and instead there was an implied agreement *not* to waive either privilege. *See Id.* As here, there was "no suggestion that the Damages Memorandum was produced as voluntary discovery in the context of a broader discussion of discovery in the action." *Id*. at *6. As here, the defendant's counsel "did not make any effort to confirm that the Damages Memorandum was intended as voluntary discovery." *Id*. Exactly as here, defendant's counsel "also **did not make clear to opposing counsel that he did not intend to abide by the condition stated by Mr. Lasky when he gave Mr. Judson the Damages Memorandum**." *Id.* [Emph. suppl.]

All of these same facts apply here. Badger's counsel stood silent and gave no indication that it did not intend to abide by the conditions placed on the use of the documents by GWA's counsel. And Badger's implicit acknowledgment that GWA did not waive any privilege is shown by Badger's own admission that the materials are inadmissible at trial. Yet Badger affirmatively used the materials for purposes other than mediation by providing the materials to help prepare, and be considered by, its testifying expert.

### C. BADGER VIOLATED THE AGREEMENT BETWEEN THE PARTIES.

Badger argues that it did not violate the mediation agreement because it provided that "**all statements, documents and disclosures made or revealed at the mediation will be treated as settlement discussions**[.]" Dkt. No. 107, Memo. in Supp. at 7. Badger then renews its argument that it did nothing wrong because in its view Plaintiff's settlement materials were not privileged

and the Mediation Agreement did not expressly refer to privilege.

First, as discussed, these communications in a mediation agreed to between the parties were independently privileged under Guam law. Also as discussed above, whether under federal, Guam, or even Minnesota law, treatment of materials as "settlement discussions" in the context of a mediation would mean that the communications between the parties will be privileged, will not be used for discovery, and will not be disclosed to third parties. Badger violated this agreement when it disclosed GWA's confidential mediation brief, marked "Mediation/Settlement Purposes Only," and Plaintiff's work-product damage model, similarly marked and reinforced by counsel's statements indicating GWA's concern that the materials *not* be used for discovery or for *any* purposes unrelated to mediation, to its testifying expert. It is uncontroverted on this record that Badger's counsel simply chose to ignore these conditions, without seeking to clarify the status of the documents first. Badger breached the mediation agreement.

**D. GWA CANNOT REMEDY MR. SARGENT'S REVIEW AND KNOWLEDGE OF THE DEVELOPMENT AND THOUGHT PROCESS OF PLAINTIFF'S COUNSEL AND DAMAGES EXPERT THROUGH A DEPOSITION, AND BADGER FAILS TO EXPLAIN OTHERWISE.**

As explained in GWA's motion, it could not cure this issue with a deposition without going into the very privileged and inadmissible settlement communications Mr. Sargent should not have seen. See Dkt. No. 96, Memo. in Supp. at 3, note 2. Mr. Sargent now contends, as experts routinely do in this situation, that he merely "considered" these materials but did not "rely" on them. But it is impossible to imagine how counsel could cross-examine Mr. Sargent without the questions themselves containing work-product and inadmissible settlement information. Badger's response to this argument is that GWA should have cured the issue by taking Mr. Sargent's deposition. Dkt. No. 107, Memo. in Opp. at 9. Badger's suggestion that GWA would reserve the right to object to its own evidence developed in such a deposition would just leave GWA with evidence that it can't

use or provide to the Court without going into those very same matters. GWA should not be required to go into those protected and privileged matters in this suit because of Badger's error in judgment.

Indeed, Rule 26(a)(2)(B) rejects this exact self-serving distinction asserted by Badger between an expert's "reliance" on materials and consideration of materials. See Comment to 2010 Amendment (the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, **not only those relied upon by the expert**.") Otherwise, an expert could fail to disclose unhelpful or damaging information just by asserting that the expert did not "rely" on it, as Badger and Mr. Sargent attempt here. But as set forth in GWA's brief, courts have rejected this same argument, that experts only considered mediation material as "background" without relying on them and found instead that the party providing the improper information to the expert must bear the consequences of its actions. *See Irwin Seating Co. v. Int'l Bus. Machines Corp.*, No. 1:04CV568, 2006 WL 3446584 (W.D. Mich. Nov. 29, 2006), aff'd, No. 1:04-CV-568, 2007 WL 518866 (W.D. Mich. Feb. 15, 2007). Badger has provided the Court with no reason to reach an alternate result here.

## II. SARGENT SHOULD NOT BE ABLE TO OFFER OPINIONS REGARDING GWA'S AUDITED FINANCIAL STATEMENTS AND PURPORTED "ANOMALIES" IN GWA DATA WHEN HE LACKS SUFFICIENT TECHNICAL KNOWLEDGE OR EXPERIENCE TO INTERPRET SUCH MATTERS.

Badger argues that Mr. Sargent, as a CPA, is qualified to opine on issues of "damages" and that a lack of expertise in the particular subject matter is irrelevant.[5] While Mr. Sargent is a CPA,

---

[5] Badger refers to one case in which Mr. Sargent was involved that purportedly involved water meters, however he was only retained as a consulting expert in that case, did not prepare a report,

it is clear that he lacks significant knowledge of the underlying industry and data issues inolved, and Badger did nothing to remedy this by providing him with proper information to evaluate the data in this case. For example, Badger did not provide Mr. Sargent with any information or assumptions regarding the degradation of water meters over time. Mittal Decl. Ex. 3, Sargent Depo. at 40:11-24.

Badger's suggestion that general expertise is sufficient when it comes to highly technical expert testimony is misguided. Numerous courts have found that otherwise highly qualified experts lack necessary specific expertise in the context of issues that call for technical knowledge. *See Arnold v. Amada North America, Inc.*, 2008 WL 3411789, at *4 (E.D.Mo. 2008) ("It is clear from his Curriculum Vitae that Peters, Arnold's proposed expert in the present lawsuit, is an impressive researcher, academic, and engineer. However, those credentials are not sufficient to make him an expert on the design of press brake machines.")

Here, despite Badger's attempt to rehabilitate Mr. Sargent, he chose to rely heavily on Audited Financial Statements in his opinions, and the one actual data point he extracted as evidence of his criticisms of Mr. Stanger's model from those statements was completely unfounded and based on his failure to understand what revenue components are contained therein. Dkt. No. 96, Memo. in Supp. at 11-12. Mr. Sargent admits that the financial statements in question (1) do not contain consumption *data* related to the LP meter; (2) there was no specific discussion of LP meter consumption data by the auditors in the statements; and (3) there was no mention of the billing data kept by GWA generally in the ordinary course of its business relating to LP meters. Dowd Decl. Ex. 6, Sargent Depo. at 65:9-23. Mr. Sargent even admitted he had not analyzed whether

---

and there is no evidence he was qualified by the court to testify. See Mittal Decl. Ex. 3, Sargent Depo. at 54.

GWA's damages as calculated by Mr. Stanger **would be higher or lower** had Mr. Stanger used data from the financial statements instead. Dowd Decl. Ex. 6, Sargent Depo. at 62:6-13.

Similarly, regarding his testimony on purported "anomalies," Mr. Sargent acknowledges that this is a "robust data set" and that there can be outliers in any such dataset. Mittal Decl. Ex. 3. Sargent Depo. at 61:2-10. Therefore, a necessary component for Mr. Sargent's testimony on "anomalies" to be reliable and properly based in his knowledge and experience is not just that there *are* data outliers, but that they are of a nature and extent that one would *not* expect to see them in this dataset. And while Plaintiff's expert has opined to the contrary, the Court does not have to decide who is "right or wrong," in this instance: Mr. Sargent just lacks the experience in this industry and with a dataset such as this one to provide reliable and useful testimony regarding whether these are true "anomalies" or just expected outliers. These mistakes are certainly not just as to complex matters for which the Court has to take Mr. Stanger at his word. For example, Mr. Sargent identified accuracy results over 100% as "anomalies" because he was unaware of the uncontroverted fact that accuracy results over 100% are acceptable under the basic AWWA industry water meter accuracy standards that both parties have used throughout this litigation. See Dowd Decl. Ex. 6, Sargent Depo. at 95:8-96:19. Mr. Sargent's deposition testimony on that matter shows that he simply brings no outside knowledge and was "shooting from the hip" based on his own assumptions, indicating that he blamed Mr. Stanger for not disclosing facts which are well-known to anyone familiar with the AWWA accuracy standards at issue in this case. Id. at 96:7-13 ("When I made issue with it, I would have thought he would have included that.") Without the necessary experience to interpret such a highly detailed and technical dataset, his opinion is unreliable and speculative and should be excluded.

## III. THE COURT SHOULD EXCLUDE MR. SARGENT'S UNDISCLOSED OPINIONS.

Badger agrees that Mr. Sargent does not intend to offer any opinions beyond those set forth in his Rebuttal Report, including any alternative damages calculation. Yet at the same time Badger suggests that some of Mr. Sargent's testimony is admissible because Plaintiff's counsel purportedly "opened the door" through his questioning.

First Badger suggests that Mr. Sargent testified to Mr. Stanger's supposed "bias" in response to a question by counsel, but the question had nothing to do with bias and was simply trying to make sure Mr. Sargent did not have additional undisclosed opinions. See Dowd Decl. Ex. 6, Sargent Depo. at 45:17-50:2. Furthermore, Badger has failed to respond to the legal authority presented by GWA showing that this improper testimony should be excluded, whether properly disclosed or not. Therefore it should be excluded.

Second, Badger's claim that testimony regarding "lost revenues vs. lost profits" was in response to Counsel's questioning is equally invalid. In the question posed, Counsel was trying to clarify which *prior* cases Mr. Sargent had testified in dealt with lost revenue specifically, as opposed to lost profits. See Dowd Decl. Ex. 6, Sargent Depo. at 122:8-11 ("So I'm asking you if you have any cases on specifically lost revenue, where there wasn't that profit analysis of cost against revenue to determine profits or losses.") Mr. Sargent then gave a new, substantive opinion for the first time, undisclosed anywhere in his Rebuttal Report, arguing that *this* case is a "lost profits" case instead of a lost revenue case. If GWA's counsel had been aware of this new opinion, he could have prepared for it. Furthermore, Mr. Sargent's answer was non-responsive, given that it was specifically regarding other cases in his background. Badger's expert should not be permitted to inject this substantial new and undisclosed opinion regarding the nature of Plaintiff's damages by making a speech in the middle of questions about his experience with other cases.

**WHEREFORE**, Plaintiff Guam Waterworks Authority respectfully prays that this Honorable Court make and enter its Order prohibiting J. Bradly Sargent from testifying in the trial of this cause, or in the alternative (1) exclude any testimony regarding Mr. Stanger's purported "bias" or otherwise improperly commenting on the credibility of any witness; (2) exclude any testimony that GWA could incur "lost profits" under accounting principles or otherwise; (3) exclude any testimony regarding an alternate calculation or alternate methods of calculating GWA's damages; (4) exclude any other opinions or expert testimony not properly disclosed in Mr. Sargent's report and deposition; and (5) for any other relief the Court deems just and proper, the premises considered.

**DATED** this 22nd day of March, 2023.

Respectfully submitted.

DOWD & DOWD, P.C.

By: /s/ *William T. Dowd*
WILLIAM T. DOWD (Pro Hac Vice)
ALEX R. LUMAGHI (Pro Hac Vice)
LAURA G. LUMAGHI (Pro Hac Vice)
RACHEL K. DOWD (Pro Hac Vice)
211 North Broadway, Suite 4050
St. Louis, Missouri 63102
Tel: 314-621-2500
Fax: 314-621-2503
bill@dowdlaw.net
alex@dowdlaw.net
laura@dowdlaw.net
racheldowd@dowdlaw.net

VINCENT LEON GUERRERO
P.O. Box 12457
Tamuning, Guam 96931
Telephone: (671) 687-5947
vlgguamlaw@gmail.com

*Attorneys for Plaintiff Guam Waterworks Authority*

# CERTIFICATE OF SERVICE

The undersigned counsel certifies that a copy of the above Memorandum in Support of Motion to Exclude the Testimony and Opinions of J. Bradley Sargent was served by operation of the Court's electronic filing system on all counsel of record this 22nd day of March, 2023.

| | |
|---|---|
| Thomas L. Shriner, Jr.<br>Philip C. Babler<br>Anne-Louise T. Mittal<br>Foley & Lardner LLP<br>777 E. Wisconsin Ave.<br>Milwaukee, WI 53202<br>414-319-7215<br>Email: tshriner@foley.com<br>        pcbabler@foley.com,<br>        amittal@foley.com | Thomas C. Sterling<br>Richard L. Johnson<br>Blair Sterling Johnson and Martinez<br>238 Archbishop Flores Street<br>Suite 1008, DNA Building<br>Hagatna, GU 96910-5205<br>671-477-7857<br>Fax: 671-472-4290<br>Email: tcsterling@bsjmlaw.com<br>        rjohnson@bsjmlaw.com |
| Venessa Miller<br>Foley & Lardner LLP<br>500 Woodward Ave., Suite 2700<br>Detroit, MI 48226<br>Email: vmiller@foley.com | |

By:  */s/ William T. Dowd*