**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| GUAM WATERWORKS AUTHORITY, | CIVIL CASE NO. 20-00032 |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |
| BADGER METER, INC., | |
| Defendant. | |

Pending before the court is Defendant Badger Meter, Inc.'s Motion for Summary Judgment ("Motion"). *See* ECF No. 51. Upon reviewing the record before it and relevant case law and hearing oral argument, the court hereby issues this order granting in part and denying in part Defendant's Motion. As discussed below, the court rules as follows:

| Count 1 | Denied |
|---|---|
| Count 4[1] | Denied |
| Count 2 | Denied |
| Count 3-A[2] | Granted |

---

[1] The filings address the counts out of order. This decision addresses the counts in the same order as the filings.

[2] Count 3 contains two separate claims against Badger Meter under the DTPA. One is for "false and deceptive statements and actions regarding the characteristics of the water meters and the replacement of those meters," and the other is for "[Badger Meter's] wrongful refusal to replace the defective water

| Count 3-B | Denied |
| --- | --- |
| Count 5 | Granted |
| Count 6 | Granted |
| Damages issue for Counts 1, 2, and 4 | Granted |
| Damages issue for Count 3 | Granted |

## I.      FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiff Guam Waterworks Authority (GWA) filed a Complaint against Defendant Badger Meter, Inc. ("Badger Meter") alleging breach of contract, breach of contract for professional services, violation of the Deceptive Trade Practices Act, breach of warranty, breach of warranty for a special purpose, and unjust enrichment. Compl., ECF No. 1-1.[4] The case was filed on August 31, 2020 in Guam Superior Court, and removed to this court on October 12, 2020. Not. Removal, ECF No. 1.

The gist of the Complaint is that GWA purchased water meters from Badger Meter that it alleges are defective. In 2011, GWA issued a Request for Proposal (RFP) to replace its metering system, due to its existing meters failing. Ex. 17, ECF No. 54-17. Badger Meter was awarded the contract. Ex. 75, ECF No. 54-76.

Badger Meter produces three models that were the correct size for GWA's residential metering system: the E-Series, the M25, and the LP. Ex. 42, ECF No. 54-42. By 2014, GWA bought 37,430 LP-model meters. Ex. 74, ECF No. 54-75. GWA began to notice that some LP

meters under warranty." Compl. ¶ 61, ECF No. 1-1. Federal Rule of Civil Procedure 10(b) states, "If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Because GWA consolidated its two DTPA claims into one count, the court will refer to the false and deceptive statements count as "Count 3-A" and the refusal to replace under warranty count as "Count 3-B."

[3] The citations in this order reflect the page numbers from the CM/ECF system.

2

meters were failing and upon notifying Badger Meter, it was agreed that replacement meters would be M25s instead of LPs. Ex. 39, ECF No. 54-39. From 2014 to 2017, some LPs were replaced with M25s by Badger Meter at no cost, and some were purchased outright by GWA at a slightly reduced rate. *Id.*

GWA faced significant time pressure. Removing failing LPs from the field, testing them, requesting replacements from Badger Meter, waiting for the replacements to be shipped, and installing the new M25s, took time—all the while GWA was losing revenue. Ex. 41, ECF No. 54-41. Eventually, GWA asked Badger Meter to replace all of the LPs that had not been replaced yet, without testing them first to determine if they were in fact failing. Ex. 36, ECF No. 54-36. After failed negotiations, GWA sent a demand letter and eventually filed this instant suit. Ex. 37, ECF No. 54-37.

Badger Meter filed its motion for summary judgment on December 7, 2022. ECF No. 51. GWA filed its opposition on January 26, 2023. ECF No. 62. Badger Meter filed its reply on February 15, 2023. ECF No. 74.

## II. SUMMARY JUDGMENT MOTION STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that a material fact cannot be genuinely disputed, the movant may:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) show[ ] that the materials cited do not establish the…presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[4] GWA also brought a direct action claim against "Doe Insurance Companies 1, 2, and 3" pursuant to 22 Guam Code Ann. § 18305. At the hearing on this motion, counsel stated that there are no Doe insurance companies.

3

Fed. R. Civ. P. 56(c)(1).

A fact is material if it might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Thus, the evidence presented in opposition to summary judgment must be "enough to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp*., 718 F.2d 897, 902 (9th Cir. 1983) (internal quotation omitted). "The mere existence of a scintilla of evidence…will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## III. ANALYSIS

### a. Count 1: Breach of Contract

GWA alleges in Count 1 that Badger Meter "is in breach of contract to provide working and accurate meters . . . [and] has further breached its agreement to replace the defective LP meters . . . ." Compl. ¶ 44, ECF No. 1-1. Badger Meter seeks summary judgment on the basis that GWA never revoked acceptance of the allegedly defective LPs. Mem. at 12–13, ECF No. 52. Under Guam's Uniform Commercial Code (UCC), a buyer must "rightfully reject[] or justifiably revoke[] acceptance" before recovering for breach of contract. 13 Guam Code Ann. § 2711(1). GWA argues that it notified Badger Meter of defects in the LP meters upon its discovery of them, and promptly began submitting warranty claims for replacement. Mem. at 21–26, ECF No. 62.

GWA first discovered problems with the LP meters after testing a small batch in September 2014. ECF Nos. 53 ¶ 74 & 63 ¶ 74. GWA requested replacements for defective LP meters in 2017 and 2018. Ex. Y at 7, ECF No. 64-24; Ex. EE, ECF No. 64-30; Ex. 92, ECF No. 76-10; Ex. 93, ECF No. 76-11.

Section 2606(1) of Title 13, Guam Code Annotated, states:

4

Acceptance of goods occurs when the buyer:
>    (a) After a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or
>    (b) Fails to make an effective rejection . . . but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them[.]

Badger Meter argues that "submitting a warranty claim is itself evidence of acceptance and thus incompatible with a breach of contract." Reply at 12, ECF No. 74. However, 13 Guam Code Ann. § 2711(1) permits a buyer who "justifiably revokes acceptance" recover for breach of contract. Section 2711 of Title 13, Guam Code Annotated,[5] is identital to Cal. Comm. Code § 2711, and, in the absence of Guam case law, the court will look to California case law. *See Guam Fed'n of Teachers ex rel. Rector v. Perez*, 2005 Guam 25 ¶ 23 ("California case law construing the identical statute is persuasive.").

Case law interpreting Cal. Comm. Code § 2711 affirms that a breach of contract claim may be asserted with a breach of warranty claim, so long as the buyer has alleged that it revoked acceptance of the goods. *Magic Link Garment, Ltd. v. ThirdLove, Inc.*, 445 F. Supp. 3d 346, 359 (N.D. Cal. 2020) (discussing *Tabletop Media, LLC v. Citizen Systems of Am. Corp.*, Case No. CV 16-7140, 2017 WL 10591885 (C.D. Cal. Mar. 3, 2017)). The court therefore does not need to decide whether submitting a warranty claim is per se acceptance, because GWA may still prevail on its breach of contract claim by proving revocation. *See also* 13 Guam Code Ann. §2608(3) ("A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.").

Section 2608(2) of Title 13, Guam Code Annotated) states,

> Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any

---

[5] Guam's UCC is adopted from the Uniform Commercial Code of California. *See* 13 Guam Code Ann. Introduction (2005).

substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

There are several mixed questions of fact and law concerning whether GWA revoked acceptance of the LP meters in compliance with § 2608(2). The fact-finder may have to determine whether for some LP meters the nonconformity was not discovered, whether revocation occurred within a reasonable time after discovery or when GWA should have discovered any nonconformity, whether the condition of the LPs was substantially changed upon revocation, whether that change was caused by their own defects, and whether GWA notified Badger Meter of revocation.

"Summary judgment is not appropriate on issues involving mixed questions of law and fact where the underlying facts are disputed." *Medina v. Donahoe*, 854 F. Supp. 2d 733, 753 (N.D. Cal. 2012) (citing *Boy Scouts of Am. v. Graham*, 86 F.3d 861, 864 (9th Cir. 1995)).

Many of these questions are disputed by the parties. *Compare, e.g.*, Mem. at 13, ECF No. 52 ("GWA has not even alleged (let along produced evidence that it *ever* notified Badger Meter that it was revoking its acceptance of the allegedly defective LP meters.") (emphasis in original) *with* Mem. at 26, ECF No. 62 ("GWA repeatedly and clearly revoked acceptance in writing as to meters it discovered to be defective by promptly sending RMI's to Badger in accordance with Badger's own instructions."). The court therefore finds that a genuine dispute of material fact exists and DENIES summary judgment for Count 1.

**b. Count 4: Breach of Written Warranty**

GWA alleges in Count 4 that Badger Meter breached the Written Warranty when it "refused to honor the LP meters' warranty as falling under the new meter standard, as well as the repaired meter standard for those meters that had been in GWA's possession over five years." Compl. ¶ 65, ECF No. 1-1. Badger Meter seeks summary judgment on two bases: (1) that GWA failed to provide timely notice of its warranty claim, and (2) that Badger Meter honored its

6

warranty obligations. Mem. at 13–20, ECF No. 52. GWA argues that it did provide timely notice for individual LPs that failed its bench testing. Mem. at 26–29, ECF No. 62.

1. *Whether GWA failed to provide timely notice is a genuine issue of material fact*

The Written Warranty states, "Badger Meter's obligation hereunder . . . shall be conditioned upon Badger Meter's receiving written notice of any alleged defect within ten (10) days after its discovery." ECF Nos. 53 ¶ 66 & 63 ¶ 66.[6] GWA first discovered problems with the LP meters after testing in September 2014. ECF Nos. 53 ¶ 74 & 63 ¶ 74. GWA's next request for replacement meters was made in 2017. *See* ECF Nos. 63 ¶ 34 & 75 ¶ 34. Badger Meter argues GWA failed to request replacement for all meters within ten days of its testing of 52 meters in September 2014. Mem. at 17, ECF No. 52. In other words, "Badger seeks to argue that notice of defect applies to all LP meters collectively." Mem. at 27, ECF No. 62. Whether the testing results meant that GWA had discovered problems with all of the LP meters is a factual question. It is a material fact because if the September 2014 test results showed that all of the LP meters were defective, GWA failed to give notice under the warranty and cannot recover for breach of warranty. The court finds a genuine dispute of material fact exists regarding whether GWA did complied with the warranty's 10-day notice requirement. Because summary judgment for Count 4 cannot be granted on this basis, the court will turn to Badger Meter's second argument.

---

[6] Section 2607(3)(a) of Title 13, Guam Code Annotated, states, "Where a tender has been accepted[, t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Section 1102(3) of Title 13, Guam Code Annotated allows the parties to define what "a reasonable time" is:

> The effect of provisions of this code may be varied by agreement, except as otherwise provided in this code and except that the obligations of good faith, diligence, reasonableness and care prescribed by this code may not be disclaimed by agreement, but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.

### 2. Whether Badger Meter honored its warranty obligations is a genuine issue of material fact

Mr. Miguel Bordallo, the general manager of GWA, sent Badger Meter a letter on August 3, 2018. Ex. 36 at 2, ECF No. 54-36. It states, "Moving forward, GWA expects the future replacement program to be treated as a recall scenario, *not as a warranty claim*. The remaining 11,110 M25 units . . . needed by GWA to complete the defective unit replacement project should be supplied to GWA at no cost." *Id.* at 6 (emphasis added). Mr. Mark Leveille, a sales manager at Badger Meter, declined GWA's proposal to replace the remaining 11,110 LP meters installed on Guam as a "recall." ECF Nos. 53 ¶ 115 & 63 ¶ 115; Ex. 46 at 2, ECF No. 54-46. Mr. Leveille added, "We do however stand by the warranty of this contract . . . ." Ex. 46 at 2, ECF No. 54-46.

Badger Meter argues that Mr. Bordallo's letter shows that in refusing GWA's proposal, it was not breaching the warranty. GWA argues that this letter was in response "to Badger's specific proposal," "which would replace all LP meters regardless of whether they passed accuracy testing." ECF No. 63 ¶ 112.

This dispute leads to the same dispute of material fact as above: whether the defects discovered in some LPs could be imputed to all of the other LPs. Replacing LPs that had not been individually tested would be above-and-beyond the requirements of the warranty if there was not "written notice of any alleged defect within ten (10) days after its discovery." Ex. 45 at 3, ECF No. 54-45; *see also* ECF Nos. 53 ¶ 66 & 63 ¶ 66. If the notice about the first round of meters tested in September 2014 constituted notice of defects in all of the LPs purchased from Badger Meter, or if at some point the subsequent testing from 2017 through 2018 achieved some critical mass of results constituting notice of defect for all of the LPs, then GWA's proposal to replace without further testing would be within the terms of the Written Warranty. If there was no need to continue testing LPs, then Badger Meter breached its warranty by refusing to replace all of the LP meters. If the meters *did* need to be tested individually to be replaced under warranty, then

8

Badger Meter honored its warranty obligations. The court finds that a genuine dispute of material fact exists regarding whether Badger Meter honored its warranty obligations. The court therefore DENIES summary judgment for Count 4.[7]

### c. Count 2: Breach of Contract for Professional Services

GWA alleges in Count 2 that Badger Meter failed "to utilize the standard of care normally exercised by professional consulting firms in performing comparable services under similar conditions." Compl. ¶ 49, ECF No. 1-1. Badger Meter seeks summary judgment on two bases: (1) that the contract did not require Badger Meter to provide a recommendation for which model would be best suited to GWA's needs, and (2) that Badger Meter did not actually recommend the LP to GWA. Mem. at 21, ECF No. 52. GWA argues that the contract plainly requires professional services as a consultant and that Badger Meter's proposal of LP meters in its quote constituted a recommendation. Mem. at 36–45, ECF No. 62.

#### 1. *Whether the contract required a recommendation is a genuine issue of material fact*

##### A. *The contract*

The contract states, "The CONSULTANT shall provide services as described in the scope of services." Ex. 75 at 1, ECF No. 54-76.[8] Badger Meter is defined as "CONSULTANT." *Id.* The

---

[7] GWA also argued that Mr. Leveille gave "binding testimony" that GWA did not fail to timely notify Badger Meter, that Badger Meter waived any notice requirement by replacing LPs in 2017 without objecting to lack of notice, that the 10-day notice requirement is unconscionable, and that Badger Meter's course of conduct amended the contract. Mem. at 26–34, ECF No. 62. The court will not address the merits of these arguments, as summary judgment on Count 4 has already been denied on other grounds.

[8] The contract, and GWA, refer to the contract as a contract for "services to supply water meters." *See, e.g.*, Ex. 75 at 2, ECF No. 54-76. "In determining whether a contract is one of sale or to provide services we look to the essence of the agreement. When a sale predominates, incidental services provided do not alter the basic transaction." *RRX Indus. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985). "Although the language of a contract can at times reveal its essence, analyzing what was in fact exchanged informs the question of predominance." *California Hydrostatics, Inc. v. Gunderson Rail Servs., LLC*, No. CV1601453RGKSPX, 2017 WL 8236355, at *4 (C.D. Cal. Oct. 19, 2017). The essence of the agreement was for Badger Meter to supply GWA with water meters, i.e., a sale of goods. Although Badger Meter offered training and software-related services, they were incidental and did not alter the basic transaction.

9

contract also states, "CONSULTANT shall perform the services utilizing the standard of care normally exercised by professional consulting firms in performing comparable services under similar conditions." *Id.* at 3. Ms. Pamela Stokke-Ceci signed the contract on behalf of Badger Meter. *Id.* at 13.

B. *The RFP*

In "Section 1.0: Instruction to Respondents of the RFP," it states, "The OFFEROR is required to read each and every page of the Request for Proposal and by the act of submitting a proposal shall be deemed to have accepted all conditions contained therein." Ex. 17 at 7, ECF No. 54-17.

Section 1 further states, "OFFEROR shall examine the RFP Documents to inform himself of all conditions and requirements for the execution of the proposed work. Ignorance on the part of OFFEROR of any part of the Request for Proposal will in no way relieve him of the obligations and responsibilities assumed under the Contract." *Id.* at 8.

In "Section 4.0: Scope of Services of the RFP," it states, "The Guam Waterworks Authority (GWA) is soliciting proposals for services from qualified firms for supply of meters for the meter replacement program. The successful respondent shall demonstrate the capability of supplying quality and dependable water meters that meet or exceed applicable American Water Works Association (AWWA) standards and other requirement as prescribed in this proposal." *Id.* at 30.

In Section 5.3, GWA asks the offerors, "How would you propose to provide local services and supply for the metering system?" *Id.* at 36.

---

Even if the contract was also for the service of recommending a model of water meter for Guam, the essence of the contract is still to supply GWA with water meters. This does not mean that the contract provisions pertaining to services were invalid. Rather, it simply means that, when applicable, the UCC governs this contract.

10

C. *Discussion*

GWA argues that the fact that the RFP specifies that Badger Meter will be providing "services" in the form of supplying AWWA-compliant meters means that the contract required Badger Meter to make a recommendation. Mem. at 36–41, ECF No. 62. However, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. . . ." 18 Guam Code Ann. § 87105.[9]

The court must determine whether the contract's term that "The CONSULTANT shall provide services as described in the scope of services" is ambiguous. Ex. 75 at 1, ECF No. 54-76. "While the parties dispute the meaning of the [contract], the fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous." *HRC Guam Co. v. Bayview II, L.L.C.*, 2017 Guam 25 ¶ 60. "A contract is ambiguous when, on its face, it is capable of two different reasonable interpretations." *Bank of Guam v. Flores*, 2004 Guam 25 ¶ 14 (internal quotation omitted).

"Whether a contract provision is ambiguous is a question of law. If it is, ordinarily summary judgment is improper because differing views of the intent of parties will raise genuine issues of material fact." *Maffei v. Northern Ins. Co.*, 12 F.3d 892, 898 (9th Cir. 1993); *see also Interpetrol Bermuda Ltd. v. Kaiser Aluminum Int'l. Corp.*, 719 F.2d 992, 998 (9th Cir. 1984) ("The interpretation of a contract is a mixed question of law and fact.").

The RFP is not attached to the contract as an addendum, and no details about what document the term "scope of services" refers to are included in the contract. Looking only at the language in the contract, it could refer to the scope of services in the RFP, or it could refer to some other "scope of services." The contract term is therefore ambiguous on its face.

11

The next question is whether the RFP can be considered incorporated into the contract. "[I]t is a well-settled principle that if a contract is ambiguous on its face, a court must look to extrinsic evidence to interpret the contract." *Bank of Guam*, 2004 Guam ¶ 14. Because this contract is governed by the UCC, the court must follow the UCC's provision about using extrinsic evidence of additional contract terms. Section 2202 of Title 13, Guam Code Annotated, permits "evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

> The analysis is two-fold: (1) whether the parties have intended the writing to be the final and complete embodiment of their agreement, and (2) whether the parol evidence contradicts the terms of the writing, for then it is inadmissible to do so; parol evidence is only admissible to supplement or explain omissions or ambiguities.

*Craftworld Interiors, Inc. v. King Enters.*, 2000 Guam 17, 2000 WL 716471, at *3.

The parties dispute whether the RFP was intended to be incorporated into the contract. *See* ECF Nos. 53 ¶¶ 54–55 & 63 ¶¶ 54–55. The parties' intent is a material fact because if the parties did not intend the RFP to be part of the contract, the "services" Badger Meter was to provide GWA were not defined by the contract and therefore, GWA cannot prevail on its claim.

The court must then determine whether the dispute over this material fact is genuine. The contract was signed by Ms. Stokke-Ceci. Ex. 75 at 7, ECF No. 54-76. When asked during her deposition whether she knew if the "scope of services" referred to in the contract could refer to any "scope of services" other than the one in the RFP, she answered "No." Ex. P at 129–30, ECF No. 66-1.

"An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d

---

[9] The court may apply Guam's general contract law when no UCC provision is applicable. 13 Guam Code Ann. § 1103 ("Unless displaced by the particular provisions of this code, the principles of law and equity .

1062, 1074 (9th Cir. 2013) (cleaned up). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A jury could reasonably find, based on Ms. Stokke-Ceci's testimony, that the parties intended to incorporate the scope of services from the RFP into the contract. The court finds that a genuine dispute of material fact exists regarding whether the contract required Badger Meter provide GWA with professional services. The court therefore DENIES summary judgment for Count 2.

### 2. *Whether Badger Meter recommended the LP*

It is undisputed that, on March 13, 2012, Badger Meter submitted Quotation No. 58327 as its "best & final offer." *See* ECF Nos. 53 ¶ 39 & 63 ¶ 39. Quotation No. 58327 lists the LP model with a quantity of 9,000. Ex. 59 at 4, ECF No. 54-60. Quotation No. 58327 also lists a plastic version of the M25, which is the same size as the LP (⅝" x ¾"), with a quantity of 1. *Id.* In the body of the email to which Quotation No. 58327 was attached, Ms. Cindy Kransler, a sales director at Badger Meter, wrote,

> In regard to shipping to Guam Port Authority, we had to make some assumptions on quantities and meter types as we quoted a few options and did not have a clear understanding of exactly the mix GWA will purchase. For example, we quoted both low lead & plastic options for 5/8" through 1", but I am not sure of your preference so we assumed low lead.

*Id.* at 2. The parties dispute whether this "proposal" constituted a "recommendation" by Badger Meter. *See* Mem. at 44–45, ECF No. 62.

"Recommend" is not a legal term. Therefore, the question of whether Ms. Kransler's email constituted a "recommendation" is a purely factual one. Whether Ms. Kransler's email constituted a recommendation is a material fact because if Badger Meter did not "recommend[]

---

. . shall supplement its provisions.").

13

that GWA use the LP meter for its residential water metering needs," GWA's theory of breach of contract for professional services fails. Compl. ¶ 51, ECF No. 1-1. The court finds there is a genuine dispute of material fact regarding whether Badger Meter recommended the LP and therefore DENIES summary judgment for Count 2.

### d. Count 3: DTPA Claim

Count 3 is brought by GWA pursuant to Guam's Deceptive Trade Practices Act (DTPA). *See* Compl. ¶ 58, ECF No. 1-1. Guam's DTPA has a three-year statute of limitations. 5 Guam Code Ann. § 32121. Badger Meter argues that the statute of limitations bars Count 3, because GWA first "became aware of the rate at which the LP meters were failing in the field by no later than the end of 2014." Mem. at 26, ECF No. 52. GWA argues that the court should apply common law tolling principles to the DTPA. *See* Mem. at 45–49, ECF No. 62. It also argues that it has a secondary DTPA claim based on Badger Meter's alleged failure to honor its warranty and that the statute of limitations does not bar that claim. *See id.* at 49.

#### 1. *Count 3-A: False and deceptive statements*

##### A. *There is no genuine issue of material fact*

The statute of limitations period for Guam's DTPA begins running on "the date on which the false, misleading, or deceptive act or practice or prohibited act occurred or . . . [when] the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice or prohibited act." 5 Guam Code Ann. § 32121.[10] The parties agree on the following facts:

- GWA is a "public corporation." ECF Nos. 53 ¶ 4 & 63 ¶ 4.

---

[10] At oral argument, GWA argued that it did not learn of some of Badger Meter's allegedly deceptive conduct until it obtained certain discovery in this case. Even if this is true, GWA did not seek to amend its complaint, so the date of discovery of allegedly deceptive conduct that begins the statute of limitations period must be before this suit was filed.

14

- Mr. Gerald Paulino was the supervisor of GWA's bench test facility in September 2014. ECF Nos. 53 ¶ 74 & 63 ¶ 74.

- Mr. Paulino first tested LP meters in September 2014. *Id.*[11]

- Of the 52 meters tested in September 2014, 80% failed low-flow accuracy testing. *Id.*[12]

Because the parties only differ on a legal issue (i.e., whether the court should apply common law tolling principles), these are the only material facts. As the only material facts are undisputed, the court must determine if Badger Meter is entitled to summary judgment on this claim as a matter of law.

B. *Judgment as a matter of law*

Section 32121 of Title 5, Guam Code Annotated, codifies what is sometimes called the "discovery rule" for Guam DTPA claims. *See Bautista v. Torres*, 2020 Guam 28 ¶ 15. When a party is a corporation, "the application of the discovery rule depends upon the knowledge of its employees." *Miniace v. Pac. Mar. Ass'n*, No. C 04-03506, 2006 U.S. Dist. LEXIS 13726, at *8 (N.D. Cal. Mar. 10, 2006). Because Mr. Paulino discovered that Badger Meter's LP meters were defective on September 4, 2014, GWA can be considered to have discovered the same fact at the same time. Three years after September 4, 2014, was September 4, 2017.

Section 32121 also allows for a 180-day extension of the limitation period "if the plaintiff proves that failure to timely commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action." Assuming *arguendo* that this condition was proven, the latest

---

[11] The parties dispute whether all of the meters tested by Mr. Paulino were out of the box or were taken from the field. *See* ECF Nos. 53 ¶ 74 & 63 ¶ 74. This dispute of fact is immaterial in determining whether common law tolling defenses should apply to GWA's DTPA claim.

[12] The record does not indicated exactly what date the testing took place. However, Mr. Paulino communicated the results of his testing to another GWA employee on September 4, 2014, so the latest

15

possible day GWA could have brought this claim under the statute was March 3, 2015. GWA

filed its complaint on August 31, 2020. *See* Compl., ECF No. 1-1.

"A federal court sitting in diversity applies the substantive law of the state, including the

state's statute of limitations [including tolling rules]." *Albano v. Shea Homes Ltd. P'ship*, 634

F.3d 524, 530 (9th Cir. 2011). This court must therefore be guided, whenever possible, by Guam

law concerning common-law tolling principles.

> There are two types of statutes of limitation. One type is treated as an
> affirmative defense in that it protects an individual defendant's case-specific
> interest in timeliness. This category of timeliness limitation typically permits
> courts to toll the limitations period in light of special equitable
> considerations. The second category, in contrast, represents a jurisdictional
> bar and seeks to achieve broader system-related goals, such as facilitating the
> administration of claims, limiting the scope of a governmental waiver of
> sovereign immunity, or promoting judicial efficiency. . . . Time limits that
> are jurisdictional must be enforced even if equitable considerations would
> support extending the prescribed time period.

*DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2020 Guam 20 ¶ 81 (internal quotations

omitted).

The court is unable to find legal authority on whether § 32121 represents a jurisdictional

bar. In determining whether a statute of limitations is jurisdictional, "[t]he proper test is not

whether a time limitation is 'substantive' or 'procedural,' but whether tolling the limitation in a

given context is consonant with the legislative scheme." *Am. Pipe & Constr. Co. v. Utah*, 414

U.S. 538, 557–58 (1974). Section 32108(a) of Title 5, Guam Code Annotated states, "This

chapter shall be liberally construed in favor of the consumer and shall be applied to promote its

underlying purposes, which are to protect consumers against false, misleading, and deceptive

business practices, unconscionable actions, and breaches of warranty, and to provide efficient and

economical procedures to secure such protection." Finding that the statute of limitations is subject

_____

possible date it could have occurred was that same day. Therefore, the court will use this date as the date

16

to common-law tolling defenses would comply with the instruction that the DTPA be construed liberally in favor of consumers. The court therefore finds that § 32121 is not jurisdictional, and is therefore subject to common-law tolling defenses. The court will now discuss whether such equitable relief applies here.

i. Equitable estoppel

GWA argues that the statute of limitations on its DTPA claim can be tolled through equitable estoppel. *See* Mem. at 46–47, ECF No. 62. Equitable estoppel is available on Guam, and has four elements:

> (1) the party to be estopped must be apprised of the facts;
> (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon;
> (3) the party asserting the estoppel must be ignorant of the true state of the facts; and
> (4) he must rely upon the conduct to his injury.

*Mobil Oil Guam, Inc. v. Lee*, 2004 Guam 9 ¶ 24. "Moreover, because the doctrine is an affirmative defense, the party relying upon the doctrine of equitable estoppel, which in this case is [GWA], has the burden to prove the existence of the four required elements essential to its application." *Id.*

GWA argues that Badger Meter is estopped from asserting a statute of limitations defense because it "engag[ed] in lulling communications and purported settlement negotiations" throughout 2017 and 2018. Mem. at 47, ECF No. 62. Even if this were true, that would only toll the statute of limitations until the end of 2018. This case was not filed until August of 2020, almost two years after that. The court finds that GWA has failed to carry its burden to show that equitable estoppel should apply to this claim.

_____

of discovery.

17

ii.  Equitable tolling

GWA argues that the statute of limitations on its DTPA claim can be tolled through equitable tolling. *See* Mem. at 47–48, ECF No. 62. The Supreme Court of Guam has shown a hesitancy to permit equitable tolling of statutes of limitations. Since permitting equitable tolling for insurance claims in *Guam Hous. & Urban Renewal Auth. v. Dongbu Ins. Co.*, 2001 Guam 24 ¶ 14, it has not found it applicable in any other type of case. *See DFS Guam L.P.*, ¶ 80 ("Since *GHURA*, we have not adopted this doctrine in any other case."); *see also Ignacio v. People*, 2012 Guam 14 ¶ 42 n.4 ("We decline to address the People's equitable tolling theory of defense because this court has not adopted equitable tolling outside of the narrow context of insurance claims."); *Taitano v. Calvo Fin. Corp.*, 2008 Guam 12 ¶ 44 n.4 ("This court has adopted the doctrine of equitable tolling in the narrow context of insurance claims.").

Given the Supreme Court of Guam's hesitancy to broaden the applicability of equitable tolling beyond insurance claims, the court finds that equitable tolling may not be applied to § 32121.

iii.  Fraudulent concealment

GWA argues that the statute of limitations on its DTPA claim can be tolled because of fraudulent concealment. *See* Mem. at 48–49, ECF No. 62. Guam does not have case law on fraudulent concealment tolling statutes of limitations. To the extent this raises an issue of first impression, and "in the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980). "In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." *Id.*

In California, "[i]t has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period

18

during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." *Sanchez v. South Hoover Hospital*, 553 P.2d 1129, 1133–34 (Cal. 1976). As with equitable estoppel, GWA has the burden of showing fraudulent concealment in order to toll the statute of limitations. *Pashley v. Pacific Elec. Ry. Co.*, 153 F.2d 325, 328 (Cal. 1944).

Most jurisdictions require fraudulent concealment as a defense to the applicable statute of limitations be pled with specificity in the complaint, or at least facts sufficient to support the application of the doctrine be alleged in the complaint.[13] Without any Guam law to guide it, the court adopts this majority approach which requires at least facts sufficient to support the application of the fraudulent concealment tolling doctrine be pled in the complaint. *See* 5 Guam Code Ann. § 32108(c)(2) ("In construing this chapter the court may consider relevant and pertinent decisions of courts in other jurisdictions.").

"To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015) (internal quotation omitted). "A fraudulent concealment defense requires a showing both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of

---

[13] *See, e.g.*, *DGB, LLC v. Hinds*, 55 So. 3d 218, 226 (Ala. 2010); *Investors Equity Life Holding Co. v. Schmidt*, 126 Cal. Rptr. 3d 135, 146 (Cal. Ct. App. 2011); *Beckenstein v. Potter & Carrier, Inc.*, 464 A.2d 18, 25 (Conn. 1983); *Leb. Cty. Employees' Ret. Fund v. Collis*, 287 A.3d 1160, 1215 (Del. Ch. 2022); *Woodruff v. McConkey*, 524 A.2d 722, 728 (D.C. 1987); *Smith v. Middle States Utilities Co.*, 275 N.W. 158, 163 (Iowa 1938); *State Indus. v. Hodges*, 919 So. 943, 946 (Miss. 2006); *Batek v. Univ. of Mo.*, 920 S.W.2d 895, 900 (Mo. 1996); *Chafin v. Wis. Province of the Soc'y of Jesus*, 917 N.W.2d 821, 825 (Neb. 2018); *Edward v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc.*, 1982 OK 72, ¶ 4.

19

action." *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983).

GWA argues that "Badger concealed highly material information from GWA of the defective nature of the LP meter, including its troubled production history, flawed design (including multiple issues unrelated to Mr. Paulino's concerns)[,] and complaints raised by other customers that the LP was inaccurate and failed at high rates." Mem. at 48, ECF No. 62. A review of the Complaint, however, reveals that GWA only alleged that "Badger concealed and failed to disclose the defective nature of its LP meters[,]"and that "Badger made false and deceptive statements and actions regarding the characteristics of the water meters and the replacement of those meters." Compl. ¶ 37 and ¶ 61, ECF No. 1-1.

Using the summary judgment standard, GWA's defense of doctrine of fraudulent concealment fails. GWA discovered the falsity of those statements at the latest on September 4, 2014, when Mr. Paulino conducted his first batch of LP meter tests. GWA therefore had actual knowledge of the facts giving rise to its claim at that time. GWA does not allege or argue that Badger Meter told GWA anything to discourage GWA from testing its LP meters. As such, the only conclusion that can be drawn from the material facts, which are undisputed, is that Badger Meter did not engage in fraudulent concealment.

### C. *Conclusion*

Based on the foregoing, Badger Meter is entitled to summary judgment on Count 3-A as a matter of law. The court GRANTS Badger Meter summary judgment for Count 3-A.

### 2. *Count 3-B: Refusal to honor warranty*

GWA alleges in its Complaint that Badger Meter "wrongful[ly] refus[ed] to replace the defective water meters under warranty." Compl. ¶ 61, ECF No. 1-1. The earliest possible date that Badger Meter can be said to have refused to replace any water meters would be September 6,

20

2018. On that date, Mr. Leveille declined GWA's proposal to replace the remaining 11,110 LP meters installed on Guam as a "recall." ECF Nos. 53 ¶ 115 & 63 ¶ 115; Ex. 46 at 2, ECF No. 54-46. This was only slightly less than two years before GWA filed its complaint. *See* Compl., ECF No. 1-1.

As stated above, the statute of limitations period for DTPA claims is three years. GWA brought its claim within the statutory period. Therefore, Badger Meter is not entitled to judgment as a matter of law, and summary judgment for Count 3-B is DENIED.

### e. Count 5: Breach of Warranty of Fitness for a Particular Purpose

Badger Meter seeks summary judgment for Count 5, GWA's claim for breach of warranty for a special purpose. GWA claims that "Badger has breached its warranty of fitness for a particular purpose by providing the defective meters and refusing to replace them." Compl. ¶ 72, ECF No. 1-1. Badger Meter argues that it is entitled to summary judgment on this claim "because Badger Meter's warranty expressly disclaims any implied warranty of fitness for a particular purpose." Mem. at 27, ECF No. 52. Warranty disclaimers "must be by a writing and conspicuous." 13 Guam Code Ann. § 2316(2). GWA argues that the warranty is a "standard 'take it or leave it' form" and that the disclaimer is not conspicuous because it does "not use larger font than the surrounding text" and is "not on the same page as any reference to the LP meter or the AWWA accuracy warranties for the LP meter at issue." Mem. at 50, ECF No. 62. GWA also argues that the disclaimer "violates principles of good faith and unconscionability." *Id.*

There is no genuine dispute that "[e]ach of the LP meters that GWA purchased from Badger Meter" was subject to the terms of Badger Meter's Written Warranty. There is also no dispute that the Written Warranty contained this disclaimer: "**THE FOREGOING WARRANTIES ARE EXCLUSIVE AND IN LIEU OF ALL OTHER EXPRESS AND IMPLIED WARRANTIES WHATSOEVER, INCLUDING BUT NOT LIMITED TO**

**IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE (except warranties of title)**." ECF Nos. 53 ¶ 69 & 63 ¶ 69; *see also* Ex. 45 at 3, ECF No. 54-45. Because the parties only differ on a legal issue (i.e., whether this was a valid disclaimer), this is the only material fact. *See* 13 Guam Code Ann. § 2316(2) ("Whether a term or clause is 'conspicuous' or not is for decision by the court."). As the only material fact is undisputed, the court must determine if Badger Meter is entitled to summary judgment on this claim as a matter of law.

As stated above, 13 Guam Code Ann. § 2316(2) requires a written warranty disclaimer must be conspicuous.

> A term or clause is *conspicuous* when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals . . . is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. . . .

13 Guam Code Ann. § 1201(10). The disclaimer here was all in capitals and in bold letters, i.e., a "contrasting type." Therefore, it was conspicuous under § 1201(10).

GWA also argues that the disclaimer is not enforceable because it was not made in good faith and is unconscionable.

> Unconscionability has both a procedural and a substantive element. Both elements must be present for a court to invalidate a contract or clause. The procedural element of unconscionability focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results that shock the conscience.

*Miller v. Ford Motor Co.*, No. 2:20-cv-01796-TLN-CKD, 2022 U.S. Dist. LEXIS 142697, at *9–*10 (E.D. Cal. Aug. 9, 2022) (internal quotations and citations omitted). As to procedural unconscionability, GWA only mentions its "desperate" need to replace its water meters. Mem. at

22

50, ECF No. 62. However, despite its "desperat[ion]," it did not experience an absence of meaningful choice—it is undisputed that GWA received five other responses to its 2011 RFP that resulted in the contract with Badger Meter. *See* ECF Nos. 53 ¶ 30 & 63 ¶ 30. GWA's unconscionability argument therefore fails.

"Good faith" is statutorily defined as "honesty in fact in the conduct or transaction concerned." 13 Guam Code Ann. § 1201(19). GWA points out that Badger Meter knew that GWA "desperate[ly]" needed to replace its meters and that there were "concerns regarding the effect of Guam's tropical environment on water meters." Mem. at 50, ECF No. 62. These circumstances do not show that Badger Meter was "[dis]honest in fact." 13 Guam Code Ann. § 1201(19).

Based on the foregoing, the court finds that GWA's arguments on the warranty disclaimer have no merit. The court therefore GRANTS summary judgment as a matter of law for Count 5.

### f. Count 6: Unjust Enrichment

Badger Meter seeks summary judgment on Count 6, GWA's claim for unjust enrichment. GWA claims that "Badger received a benefit from GWA as a result of its supply of the defective and inappropriate LP water meters and from its negligent provision of professional services to GWA." Compl. ¶ 79, ECF No. 1-1. Badger Meter argues that GWA cannot bring an unjust enrichment claim because unjust enrichment can only be brought in quasi-contract, and a valid contract existed in this case. Mem. at 28–29, ECF No. 52. GWA argues that it can pursue an unjust enrichment claim because it has not received the benefit of the bargain under the contract and because it claims the contract does not govern all aspects of the parties' dispute. *See* Mem. at 51–52, ECF No. 62.

It is undisputed that a contract was executed by the parties in this case. *See* ECF Nos. 53 ¶ 52 & 63 ¶ 52. As it is undisputed, the court must determine if Badger Meter is entitled to

summary judgment on this claim as a matter of law, i.e., whether an unjust enrichment claim may lie when a valid contract exists.

GWA may bring an unjust enrichment claim alongside contract claims as an alternative claim. *See* Fed. R. Civ. P. 8(d)(2–3). Unjust enrichment claims are permitted in Guam in quasi-contract cases. *See Tanaguchi-Ruth & Assocs. v. MDI Guam Corp.*, 2005 Guam 7 ¶ 29. However, "[i]t is commonly understood that 'unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties.'" *Guam Hous. Corp. v. Allstar, Inc.*, Superior Court Case No. CV0461-20, 2020 Guam Trial Order LEXIS 186, at *12–*13 (Super. Ct. Guam Nov. 20, 2020) (quoting *Paracor Finance Inc. v. General Elec. Finance Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)); *see also Fed. Deposit Ins. Corp. v. Dintino*, 84 Cal. Rptr. 3d 38, 49 (Cal. App. 2008) ("[A] cause of action for unjust enrichment is not based on, and does not otherwise arise out of, a written contract. Rather, unjust enrichment is a common law obligation implied by law based on the equities of a particular case and not on any contractual obligation.").

GWA pled its unjust enrichment claim in the alternative. *See* Compl. ¶ 79, ECF No. 1-1; *see also Roberto v. Terlaje*, CIVIL CASE NO. CV0969-19, 2020 Guam Trial Order LEXIS 190, at *11 (Super. Ct. Guam Jan. 28, 2020) ("It is undisputed that Plaintiff is permitted to plead an unjust enrichment claim in the alternative, which would normally mean that dismissal of that claim based solely on the existence of a contract or potential for an adequate remedy at law would be premature and inappropriate.").

However, it did *not* plead in the alternative that the contract it had with Badger Meter was invalid. GWA's unjust enrichment claim therefore cannot lie. *See Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 333 (Cal. App. 2012) ("Instead, plaintiffs' breach of contract claim pleaded the existence of an enforceable agreement and their unjust enrichment claim did not deny

24

the existence or enforceability of that agreement. Plaintiffs are therefore precluded from asserting a quasi-contract claim under the theory of unjust enrichment."). The court therefore GRANTS Badger Meter summary judgment for Count 6.

### g. Damages Sought for Counts 1, 2, and 4

Badger Meter seeks partial summary judgment on a warranty affirmative defense to the damages GWA seeks for Counts 1, 2, and 4.[14] Specifically, Badger Meter wants the court to find that GWA cannot recover any consequential damages for its breach of contract and warranty claims or, in the alternative, that GWA's overall recovery is limited to the contract price.

GWA seeks damages for Counts 1 and 2, its breach of contract claims, in the form of compensatory damages (Compl. ¶¶ 47(a–d) & 56(a–d), ECF No. 1-1), attorneys' fees (Compl. ¶¶ 47(e) & 56(g), ECF No. 1-1), and "such other and further relief as the Court deems just" (Compl. ¶¶ 47(f) & 56(e), ECF No. 1-1). GWA seeks damages for Count 4, its breach of warranty claim, in the form of replacement cost value, incidental, and consequential damages. Compl. ¶¶ 70 & 7, ECF No. 1-1.

Guam's UCC permits parties to provide for specific remedies and to limit consequential damages in their contract. *See* 13 Guam Code Ann. § 2719(1) & (3). However, other remedies may be had when the agreed-upon remedy fails of its essential purpose, and limitations on consequential damages are invalid when the limitation is unconscionable. *See* 13 Guam Code Ann. § 2719(2) & (3).

Badger Meter argues that the Written Warranty's exclusive repair-or-replace remedy did not fail of its essential purpose because it remained willing to replace meters that were covered by

---

[14] Badger Meter also sought partial summary judgment on this issue regarding damages for Counts 5 and 6. Because the court has granted Badger Meter summary judgment for Counts 5 and 6, this issue is moot as to those Counts.

the warranty. *See* Mem. at 32, ECF No. 52.[15] Specifically, Badger Meter argues that it would

have replaced meters that (1) GWA informed Badger Meter were defective within the time period

required by the Written Warranty (10 days of discovery of the defect) and (2) were "proved to

Badger Meter's satisfaction" to be defective, per the Written Warranty. *See* Mem. at 32, ECF No.

52. GWA argues that the remedy did fail of its essential purpose because Badger Meter refused

"to continue to honor its 'repair or replace' warranty based on the terms previously agreed and

carried out by the parties." Mem. at 54, ECF No. 62.

The parties agree that the Written Warranty states that Badger Meter's "obligation

hereunder shall be limited to such repair and replacement . . . ." *See* ECF Nos. 53 ¶¶ 65–66 & 63

¶¶ 65–66; *see also* Ex. 45 at 3, ECF No. 54-45.

The following relevant facts are undisputed:

- GWA was receiving M25s as replacements for failing LPs starting in 2014. *See* ECF Nos. 53 ¶ 94 & 63 ¶ 94. However, "GWA is not seeking repair and replacement costs for LP meter failures prior to 2017." ECF No. 63 ¶ 106.

- "GWA submitted a claim for warranty meters from the field in February 2017 and noted that the LP failures were affecting GWA revenue." *See* ECF Nos. 63 ¶ 34 & 75 ¶ 34.

- Another warranty replacement request was submitted by GWA to Badger Meter on March 24, 2017. *See* ECF Nos. 63 ¶ 36 & 75 ¶ 36.

- Badger Meter confirmed that the warranty-covered failed LPs would be replaced with M25s on March 28, 2017. *See* ECF Nos. 63 ¶ 37 & 75 ¶ 37.

- Badger Meter's last shipment of replacement M25s for failed LPs was in November 2017. *See* ECF Nos. 63 ¶ 39 & 75 ¶ 39.

- On March 15, 2018, Badger Meter confirmed that the 3,487 outstanding warranty-

---

[15] Badger Meter also cites to the economic loss rule as precluding recovery not provided for in the Written Warranty. *See* Mem. at 31 n.8, ECF No. 52. The economic loss rule "operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." *Maeda Pac. Corp. v. GMP Haw., Inc.*, 2011 Guam 20 ¶ 24 (internal quotations omitted). None of GWA's claims are tort claims, and none of the remedies sought are tort remedies. Therefore, Badger Meter's economic loss rule argument is unavailing.

26

covered failed LPs would be replaced with M25s. *See* ECF Nos. 53 ¶ 107 & 63 ¶ 107; Ex. 77 at 4–5, ECF No. 54-78.

- GWA informed Badger Meter that it intended to purchase 10,000 replacement M25s for failed LPs on March 16, 2018. *See* ECF Nos. 53 ¶ 111 & 63 ¶ 111; Ex. 79 at 5, ECF No. 54-80.

The following relevant facts are also in the record:

- Badger Meter shipped replacement meters to GWA on April 26, 2017 (1,023 meters), June 29, 2017 (1,165 meters), August 8, 2017 (345 meters), and November 20, 2017 (2,760 meters). Ex. Y at 7, ECF No. 64-24.

- GWA requested 216 replacements for failed LPs on September 18, 2017. Ex. EE, ECF No. 64-30.

- GWA requested 413 replacements for failed LPs on January 23, 2018. Ex. 92, ECF No. 76-10.

- GWA requested 354 replacements for failed LPs on February 13, 2018. Ex. 93, ECF No. 76-11.

There is nothing in the record showing that GWA notified Badger Meter about the hypothetical failure of the 10,000 particular LP meters it purchased replacement M25s for. *See* Ex. 79 at 5, ECF No. 54-80. Badger Meter's version of events is that it offered to continue to replace LPs that failed and were covered by warranty with M25s, but instead of carrying on with the warranty replacements, GWA suddenly decided to purchase 10,000 M25s instead. *See* Reply at 28, ECF No. 74. GWA's version of events is that Badger Meter took so long to process and ship the free replacement M25s that it was forced to purchase them instead in order to curtail its revenue losses. Mem. at 54, ECF No. 62; ECF No. 63 ¶ 111.

The question of whether Badger Meter's replacement process was so slow that it "forced" GWA to purchase 10,000 replacement meters is a mixed question of law and fact. As such, "[s]ummary judgment is appropriate only if 'the facts and the law will reasonably support only one conclusion.'" *Delange v. Dutra Constr., Co.*, 183 F.3d 916, 919 (9th Cir. 1999) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)).

27

Section 2719 of Title 13, Guam Code Annotated states:

> (1)(a) The agreement may provide for remedies in addition to or in substitution for those provided in this division and may limit or alter the measure of damages recoverable under this division, as by limiting the buyer's remed[y] to . . . repair and replacement of nonconforming goods or parts; and
> (b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code.

There being no Guam case law interpreting what constitutes failure of essential purpose under 13 Guam Code Ann. § 2719(2), the court looks to persuasive authority.

The Ninth Circuit, in interpreting California Commercial Code § 2719(2),[16] said, "[T]he law is that a repair or replace remedy fails of its essential purpose only if repeated repair attempts are unsuccessful *within a reasonable time*." *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984) (emphasis in original). Additionally, "[Cal. Com. Code § 2719(2)] has been construed to mean that where the remedy provided by agreement operates to deprive either party of the 'substantial value of the bargain' it will not be enforced." *Klein v. Asgrow Seed Co.*, 54 Cal. Rptr. 609, 619 n.8 (Cal. Ct. App. 1966) (quoting West's, *op. cit.*, Comment 2 under § 2719). The Ninth Circuit also explained,

> This rosy picture of the limited repair warranty, however, rests upon at least three assumptions: that the warrantor will diligently make repairs, that such repairs will indeed "cure" the defects, and that consequential loss in the interim will be negligible. So long as these assumptions hold true, the limited remedy appears to operate fairly and, as noted above, will usually withstand contentions of "unconscionability." But when one of these assumptions proves false in a particular case, the purchaser may find that the substantial benefit of the bargain has been lost.

*S. M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d 1363, 1375 (9th Cir. 1978) (quoting Eddy, *On the "Essential" Purposes of Limited Remedies: The Metaphysics of U.C.C. Section 2-*

---

[16] Cal. Com. Code § 2719(2) has the exact same wording as 13 Guam Code Ann. § 2719(2).

*719(2)*, 65 Calif. L. Rev. 28, 63 (1977)). In *Milgard Tempering v. Selas Corp. of Am.*, 902 F.2d 703 (9th Cir. 1990), the Ninth Circuit interprets Wash. Rev. Code § 62A.2-719(2), which is worded almost identically to 13 Guam Code Ann. § 2719(2)). In that case, the Ninth Circuit said,

> A limited repair remedy serves two main purposes. First, it serves to shield the seller from liability during her attempt to make the goods conform. Second, it ensures that the buyer will receive goods conforming to the contract specifications within a reasonable period of time. . . . A contractual provision limiting the remedy to repair or replacement of defective parts fails of its essential purpose within the meaning of § 62A.2-719(2) if the breaching manufacturer or seller is unable to make the repairs within a reasonable time period.

*Milgard Tempering*, 902 F.2d at 707–08.

On the other hand, "[t]he aggrieved party ordinarily must provide the other party a reasonable opportunity to carry out the exclusive or limited remedy before successfully arguing failure of essential purpose." *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 783 (N.D. Cal. 2017) (internal quotation omitted); *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 970 (N.D. Cal. 2014) ("[B]efore the exclusive repair and replace remedy is considered to have failed of its essential purpose, the seller *must be given an opportunity* to repair or replace the product.") (internal quotation omitted).

Badger Meter was replacing the LPs with M25s instead of repairing them. GWA states that the M25 meters function "appropriately in the environment of Guam." ECF No. 63 ¶ 20. Therefore, the M25s "cured" the "defect" of the LP's inability to cope with the debris in Guam's water. The two questions are then whether Badger Meter was diligent in replacing the LPs with M25s and whether GWA suffered a non-negligible loss in the interim.

The record does not contain evidence of when each defective LP was reported and when a corresponding M25 was received by GWA. The court therefore cannot determine what the actual longest replacement delay was. The record does show that Badger Meter was sending out shipments of replacement meters approximately every 2–3 months in 2017. Ex. Y at 7, ECF No.

29

64-24. In *Milgard Tempering*, the Ninth Circuit found that a repair that was delayed over two and one-half years constituted unreasonable delay. *Id.* at 708. Because Badger Meter was sending shipments to Guam every two or three months, with a substantial number of meters sent on each shipping date, it was diligent in this case.

As to whether GWA, while waiting for delayed replacement, suffered non-negligible loss in the interim, the court cannot find that it did. *See S. M. Wilson & Co.*, 587 F.2d at 1375. GWA states in its memorandum that it "will offer expert testimony at trial that the failure of the LP meters to accurately record water has resulted in at least $15.9 million in lost revenue." Mem. at 9, ECF No. 62-1. This figure does not reflect how much was lost *due to Badger Meter's delays*, that is, how much was lost in the months that passed between reporting that LPs were defective and the receipt of replacement M25s. More importantly, this testimony is not in the record before the court. "[T]he Court [will not] consider . . . speculation that some future testimony or other hypothetical evidence not in the record might conceivably raise a genuine issue of material fact." *Brown v. County of San Bernardino*, 250 F. Supp. 3d 568, 586–87 (C.D. Cal. 2017) (citing to *Aerotec Internat'l, Inc. v. Honeywell Internat'l, Inc.*, 836 F.3d 1171, 1175 (9th Cir. 2016)).

Furthermore, in 2018, only four days after confirmation from Badger Meter that the remainder of the reported failed LPs would be replaced, GWA submitted a purchase order for 10,000 additional replacements for failures it had not reported. Ex. 77, ECF No. 54-78. GWA was still requesting the outstanding free replacements Badger Meter had confirmed were in process (approximately 3,400 meters) at the time it submitted its purchase order. Therefore, there is no overlap between the meters GWA sought to replace with the batch of 3,400 and the meters GWA

30

presumably intended to replace with the batch of 10,000.[17] This means that this was Badger Meter's first notice that there were 10,000 more LP meters failing.

With no opportunity given to Badger Meter to replace these meters, no evidence that Badger Meter was not diligent in replacing defective LPs, and no evidence in the record that GWA's lost revenue was so extreme as to render two or three months delay unreasonable, the court finds that there was no undue delay in Badger Meter's replacement of the failing LP meters. With no undue delay, the repair-or-replace remedy did not fail of its essential purpose, and the Written Warranty prevents GWA's recovery of consequential damages for Counts 1, 2, and 4.

Because the Written Warranty's remedy did not fail of its essential purpose, the liability limitation issue is moot. The contract provides for one exclusive remedy, which is repair-or-replace. *See* 13 Guam Code Ann. 2719(1)(b). If GWA prevails on Counts 1, 2, or 4, it is entitled to repair or replacement of the remaining LP meters. The court GRANTS Badger Meter partial summary judgment for the damages for Counts 1, 2, and 4.

### h. Damages Sought for Count 3[18]

At oral argument, the court found that GWA's counsel are de facto Special Assistant Attorneys General, and ordered the parties to brief the issue of whether GWA's representation by de facto Special Assistant Attorneys General constitutes representation by the Attorney General for the purposes of Guam's DTPA. *See* ECF No. 134. The parties submitted their briefs and responses. *See* ECF Nos. 137, 138, 152, & 153.

GWA argues that because 12 Guam Code Ann. § 14109(c) permits the Attorney General to delegate his duty to represent GWA in litigation to "the Attorney of the Authority," the court

---

[17] There also is no indication on the record or in the filings that purchasing meters outright instead of submitting warranty replacement claims would result in the meters arriving on Guam faster. Counsel were unable to shed light on this issue at oral argument.

31

should consider it as represented by "the Attorney of the Authority," and not by the Attorney General. Mem. at ¶¶ 11–17, ECF No. 137. However, in this case the Attorney General did not delegate his authority to represent GWA under § 14109(c), instead he appointed Special Assistant Attorneys General. The "Attorney of the Authority" is Ms. Theresa G. Rojas. *See* ECF No. 126. Ms. Rojas does not represent GWA in this case. Regardless of who actually hired GWA's counsel for this case, they initially appeared on behalf of GWA pursuant to appointments as Special Assistant Attorneys General, not Special Attorneys of the Authority.

The court concurs with Badger Meter's argument that, "if current counsel were to be removed," "representation would necessarily revert to the Attorney General" pursuant to § 14109(c). Suppl. Br. at 8, ECF No. 138. GWA's counsel only remains on this case to honor ethical obligations and avoid prejudicing the parties at the court's behest. *See* ECF No. 129. Finding GWA exempt from the restrictions of § 32111(c) simply because the court ordered counsel to remain on the case instead of allowing them to be replaced by the Attorney General or his designees would, as Badger Meter wrote, "elevate form over function." Suppl. Br. at 3, ECF No. 138. The court therefore finds that the restrictions of § 32111(c) apply to GWA in this case, and GRANTS Badger Meter partial summary judgment as to the damages for Count 3.

## IV. CONCLUSION

The court denies summary judgment as to Counts 1, 4, 2, and 3-B. The court grants summary judgment as to Counts 3-A, 5, 6, and the damages issues regarding Counts 1, 2, 3, and 4. The Clerk is directed to enter judgment in accordance with the court's ruling.

**SO ORDERED**.



/s/ Frances M. Tydingco-Gatewood
Chief Judge
Dated: Jun 16, 2023

---

[18] As discussed above, GWA's DTPA claim, referred to as Count 3-B, survives summary judgment. As summary judgment on Count 3-A was granted, Count 3-B shall now be referred to as "Count 3."